Ehab M. Samuel (SBN 228296)
esamuel@orbitip.com
David A. Randall (SBN 156722)
dave@orbitip.com
**ORBIT IP, LLP**
620 Newport Center Drive, Suite 1100
Newport Beach, CA 92660
Phone:  (310) 887-1333
Fax:  (310) 887-1334

*Attorneys for Plaintiffs*
*Boltier R&D, Inc., ADC Energy, Inc.,*
*Hun Yong Choe, and Choe Family, LLC*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BOLTIER R&D, INC., a California corporation, ADC ENERGY, INC., a California corporation, CHOE FAMILY LLC, a California Limited Liability Company, and HUN YONG CHOE, an individual, directly and derivatively on behalf of CHOE FAMILY, LLC, a California limited liability Company,<br><br>        Plaintiffs,<br><br>        v.<br><br>HENRY M. LEE, an individual, JOHNNY PHAM, an individual, MIKA YAMAMORI, an individual, GEORGE SHROUDER, an individual, JINA LEE, an individual, ADC ENERGY USA, INC., a California corporation, HAJA FAMILY, LLC, a California Limited Liability Company, ADC AIR LLC, a Nevada Limited Liability Company, and DOES 1 through 100, inclusive,<br><br>        Defendants, | Case No.<br><br>COMPLAINT FOR:<br><br>(1) Trademark Infringement;<br>(2) Trade Secrets Misappropriation;<br>(3) Violation of The Racketeer Influenced Corrupt Organizations Act (RICO);<br>(4) Conspiracy To Violate RICO;<br>(5) Declaratory Judgment;<br>(6) Civil Conspiracy;<br>(6) Breach Of Fiduciary Duty;<br>(7) Aiding and Abetting Breach of Fiduciary Duty;<br>(8) Conversion;<br>(9) Unjust Enrichment;<br>(10) Unfair Business Practices Under California Business and Professions Code Section 17200;<br>(11) Elder Abuse;<br>(12) Fraudulent Misrepresentation; and<br>(13) Negligent Misrepresentation<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT**

# INTRODUCTION

1.      Over the past three years, Defendant Henry Lee ("Lee"), along with his co-conspirators, have engaged in an elaborate device, scheme, or artifice designed to defraud Plaintiff Hun Young Choe ("Choe") out of control of, and his ownership interest in, Plaintiff Choe Family, LLC ("Choe Family") and to steal all the intellectual property rights of Plaintiff Boltier R&D, Inc. ("Boltier") (hereinafter the "Boltier IP").  This is referred to herein as the "LEE Scheme." As detailed below, Defendant Lee and his co-conspirators have carried out multiple federal and state crimes to achieve, or attempt to achieve, the objectives of the LEE Scheme.

2.      Plaintiff Boltier was formed by inventor, Plaintiff Choe, as an intellectual property holding company to hold Plaintiff Choe's inventions and related intellectual property, including Plaintiff Choe's inventions related to his ground-breaking electric current conversion technology.  In turn, Plaintiff Boltier licensed its subsidiary Plaintiff ADC Energy, Inc. ("ADC Inc.") to exploit the Boltier IP worldwide and ADC Inc. in turn sublicensed the Boltier IP to its subsidiary Defendant ADC Energy USA, Inc ("ADC USA") to exploit the Boltier IP throughout the U.S..

3.      Prior to Defendant Lee embarking on the LEE Scheme, Plaintiff Choe owned 100% of Plaintiff Choe Family, and Choe Family in turn controlled and owned the majority of Plaintiff Boltier. Further, at that time, Plaintiff Boltier controlled and owned the majority of Plaintiff ADC Inc., which in turn controlled and owned the majority of Defendant ADC USA. Since May 2021, Defendant Lee and his co-conspirators have engaged in a device, scheme, artifice to defraud Plaintiff Boltier of the ownership of the Boltier IP, defraud Plaintiff Choe out of control and ownership of the Choe Family and ADC Inc., and defraud Plaintiff ADC Inc. out of its rights in the Boltier IP, as well as its ownership and control of Defendant ADC USA, which ultimately inured to the benefit of Plaintiff Choe through the corporate ownership and structure of the companies.

4.      To carry out, and in furtherance of, the LEE Scheme, over the last three

years, Defendant Lee formed a criminal enterprise with various co-conspirators, which now includes Defendants Jina Lee ("Jina"), Johnny Pham ("Pham"), Mika Yamamori ("Yamamori"), George Shrouder ("Shrouder"), HAJA Family, LLC ("HAJA"), and DOES 1 through 100, whose names are presently unknown.

5.      In May of 2021, Lee was an officer, Secretary, and board member of both Boltier and ADC Inc. He was also the Chief Executive Officer and board member of Defendant ADC USA.

6.      In May of 2021, Boltier, ADC Inc. and ADC USA had separate, distinct individual and institutional shareholders, but all were controlled directly or indirectly by Choe Family and Choe, who owned 100% of Choe Family.  Boltier held certain intellectual property rights related to Choe's unique alternating direct current technology. The intellectual property included four recently issued patents for Choe innovations on electrical current hybridization as well as trademarks, copyrights, and trade secrets related to the novel technology.

7.      ADC USA was an operating company that through a sublicense agreement with ADC Inc. had permission to commercially use and monetize the technology and proprietary information within the United States in exchange for substantial license fees to both Boltier and ADC Inc.

8.      Boltier, ADC Inc., and ADC USA were different parts of the same metaphorical body. Boltier held the intellectual property rights in the right hand, while ADC USA (through a sublicense from ADC Inc.) on the left hand had rights through the license agreement to use and access those rights within the United States. Plaintiffs Choe and the Choe Family were at the head of the organization of the related companies and positioned to benefit from all of their successes.

9.      Plaintiff Choe was born in Korea and lived there until he was 26 before immigrating to the United States. As a result, despite his undeniable intellect, Choe is not proficient in English and his ability to communicate and understand the English language (both written and spoken) is limited.

10.     On May 29, 2021, Lee deceived Choe to give up certain of his control rights and his shares to Choe Family and ADC Inc. through a series of agreements that purportedly gave 25% ownership of Choe Family to Defendant HAJA, a company owned and controlled by Defendant Lee. The May 29, 2021, agreements also purportedly gave control to Lee of Plaintiff Choe Family as its member-manager with full veto rights through then (and still)-defunct HAJA. HAJA, unbeknownst to Choe, had no authority to enter into this transaction. The May 29, 2021, transaction is also void for, among other reasons, Lee's self-dealing and Lee's breaches of his fiduciary duties and business and professions code obligations to Plaintiffs Choe, Choe Family, Boltier, and ADC Inc. due to his business and professional relationships with Choe, Boltier, and ADC Inc. at the time of the purported May 29, 2021, transaction.

11.     While the full extent of the acts Lee and his co-conspirators have taken to implement the LEE Scheme have yet to be uncovered, on or about January 30, 2023, Lee fabricated a written "unanimous consent" for Boltier's board of directors with an interposed, forged signature for Choe that was cut-and-pasted from another document, as this side-by-side comparison of Choe's signatures shows.



| **SIGNATURE ON ORIGINAL DOCUMENT** | **CUT-AND-PASTED "SIGNATURE" ON FAKE DOCUMENT** |

**COMPLAINT**

12.     The fake document contained no consent or signature line for Boltier's other board member, Choe's son, Alan Choe ("Alan").   Alan, like Choe, was completely in the dark regarding Lee's actions.

13.     The forged consent document reflected that Boltier, Choe personally, and all ADC entities, including ADC Inc. expressly assigned all of their intellectual property and other rights and assets **to Lee** personally.   The forged document then authorized Lee to assign those rights to a separate company he controlled.

14.     The intended consequence of Lee's actions for the criminal enterprise was to: (a) steal all valuable patents, trademarks and proprietary, trade secrets-protected technology belonging to Boltier, Choe, and/or ADC Inc.; and (b) deprive Boltier and ADC Inc. of licensing fees they were entitled to under a licensing agreement they had with ADC USA.

15.     This fraudulent transaction sought to sever the metaphorical Boltier-ADC Inc.-ADC USA body. Following the January 2023 fraudulent transaction, Lee transferred the fraudulently obtained intellectual property rights to ADC USA, a company that he has apparently taken control of even though ADC Inc. had owned over 57% of company in December of 2022—and thus controlled the ADC USA—and ADC Inc. has never been invited to a number of shareholder meetings held by the company since the fraudulent transaction.   Defendants Lee and ADC USA have also transferred at least the right to use certain of the Boltier IP rights to a new entity that Lee created - ADC Air, Inc. ("ADC Air").

16.     Not only did Lee fake Choe's signature, eliminate Alan's signature line and fail to obtain a unanimous consent of the ADC Inc. board, but also Lee could not accomplish such asset transfer by waving the wand of a "unanimous board consent" of Boltier alone or ADC Inc. alone. Not surprisingly given this transfer was fraudulent and Lee and his co-conspirators need to keep Choe and Alan completely unaware of it, no compensation was paid to Boltier or ADC Inc. for this "transfer" of the ownership of the vast and valuable intellectual property. A *gratis* disposition of

substantially all corporate assets of two separate legal corporations—with no consideration in exchange—having several distinct shareholders would at least require several shareholder meetings, approvals, and voting. Lee, as Secretary for each of Boltier and ADC Inc., never even attempted to conduct or engage in the necessary shareholder and board suffrage.

17. Instead, after fraudulently purporting to secure the assignments, Lee filed the assignments using the online portal for the United States Patent and Trademark Office ("USPTO") to transfer *two* federal trademark registrations and *four* issued patents to himself.

18. Notably, on February 23, 2023, Lee fraudulently transferred to himself U.S. Trademark Registration No. 6,219,301 for ADC ENERGY and U.S. Trademark Registration No. 5,850,106 for POWER EVERYONE. And, on March 11, 2023, Lee, as part and parcel, and in furtherance and for the benefit of the criminal enterprise, then filed the fraudulent assignment on the USPTO online portal for Boltier's four patents: (i) U.S. Patent No. 9,231,437; (ii) U.S. Patent No. 9,462,643; (iii) U.S. Patent No. 9,635,720; and (iv) U.S. Patent No. 9,893,560.

19. Then, on March 21, 2023, Lee filed another set of assignments, transferring the *two* federal trademark registrations and the *four* issued patents from himself to ADC USA.

20. On or about June 27, 2023, Lee formed a new venture with co-conspirator ADC Air and its members to commercially exploit at least portions of the Boltier IP that Lee had fraudulently "transferred" from Boltier to himself and then to ADC USA.

21. On information and belief, ADC Air, ADC USA, Lee, Jina, Shrounder, Pham, Yamamori, and the other co-conspirators continue to raise money from third parties and enter into new business ventures based on the forged assignments and fraudulent electronic filings with the USPTO, and to provide false and inaccurate information to the ADC USA shareholders regarding the status of ownership of the

1 | Boltier IP.

2 | 22. On information and belief, for their part, Shrouder, Pham and Yamamori—as executives and/or employees at ADC USA throughout the relevant time—actively participated in the fraudulent scheme, transfers and recordation of the fraudulent "transfers" with the USPTO and Secretary of State (as further set forth below). They have aided and abetted ADC USA and ADC Air to exploit millions of dollars in revenue from lucrative business deals with third parties based on the Boltier IP stolen from Boltier and have actively engaged in the acts below that constitute elder abuse as to Choe.

23. Now that Choe has finally uncovered their scheme, he seeks to unravel the fraud effected on him, Choe Family LLC, Boltier, ADC Inc., and fellow ADC Inc. and Boltier shareholders.

24. Accordingly, Boltier, ADC Inc., and Choe, for the benefit of Choe Family, and the shareholders he ultimately represents, bring this action for trademark infringement, trade secrets misappropriation under the Defend Trade Secrets Act, violation of the federal Racketeer Influenced and Corrupt Organizations Act, declaratory judgment, and other state law claims to restore the stolen rights to Boltier, ADC Inc., Choe Family, and himself, and to recover an award of compensatory, other damages, and attorneys' fees allowable by law.

## JURISDICTION AND VENUE

25. This action arises under: (i) the United States Lanham Act, 15 U.S.C. §1051 *et seq.*, including 15 U.S.C. §§ 1114, 1115 and 1125; (ii) the United States Defend Trade Secrets Act ("DTSA"), 18 U.S.C. §1836 *et seq.*; (iii) the United States Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, including 18 U.S.C. § 1964(c); and (iv) several state law claims, including breach of fiduciary duty, conversion, elder abuse, unfair business practices, fraudulent and negligent misrepresentation, among others, under California law.

26.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121, as well as 28 U.S.C. §§ 1331 and 1338(a) because of the federal claims asserted under 15 U.S.C. § 1114, 1115 and 1125, 18 U.S.C. § 1836, and 18 U.S.C. § 1962. Further, the Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367, since they are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts.

27.     This Court has personal jurisdiction over Defendants Lee, Pham Yamamori, Jina, and Shrouder because they reside in this District. The Court also has personal jurisdiction over Defendant ADC USA because its principal place of business is within this District, conducts business in California and this District by marketing, selling, distributing, and/or causing to be distributed infringing products, and committing acts of misappropriation and civil wrongs as alleged in this Complaint. Similarly, this Court also has personal jurisdiction over Defendant ADC Air because, on information and belief, it conducts business in California and this District by: (i) marketing, selling, distributing, and/or causing to be distributed infringing products, and committing acts of misappropriation and civil wrongs as alleged in this Complaint; (ii) entering into agreements and conspiring with ADC USA to exploit the fraudulently transferred intellectual property.

28.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b) and (c) because the defendants reside in this judicial district and/or a substantial part of the acts of infringement and civil wrongs giving rise to the claims asserted herein occurred in this District.

## **PARTIES**

29.     Plaintiff Choe is currently a sixty-nine-year-old individual born and raised in Korea and now residing in Cerritos, California. He is an inventor of certain ground-breaking technology, which he assigned to Boltier and licensed to ADC Inc. At all relevant times, Choe directly or indirectly, controlled Boltier and ADC Inc. through Choe Family. Choe was originally a 100% owner of Choe Family until May

**COMPLAINT**

29, 2021, when Defendants HAJA and Lee purportedly took ownership of 25% of Choe Family through a device, scheme, or artifice designed to defraud Choe of his control of Boltier and the other ADC entities. Choe's wife had passed away just three months prior to Lee and HAJA purportedly taking a 25% control ownership interest in and control of Choe Family, which made Choe especially vulnerable to the pressure campaign and tactics of Lee, a trained lawyer, Choe's trusted advisor, and Choe's lawyer.

30.    At all relevant times, Choe was the Chief Executive Officer of each of ADC Inc. and Boltier and served on their board of directors.   Choe was also a managing member of Choe Family and Choe also was an officer of ADC USA and served as chairman of the board of directors until April 19, 2023, when Lee unilaterally and illegally removed him from both positions without a shareholder vote.

31.    Plaintiff Boltier is a corporation organized under the laws of California, with a principal place of business at 13252 Bigelow St., Cerritos, California 90703. Boltier holds 74.5% of the outstanding shares of ADC Inc. Boltier also owns certain intellectual property rights for Choe's inventions.

32.    Plaintiff ADC Inc. is a corporation organized under the laws of California, also with a principal place of business at 13252 Bigelow St., Cerritos, California 90703. As of December 22, 2022, ADC Inc. owned 57.0875% of the shares in ADC USA. ADC Inc. also licenses certain intellectual property rights for Choe's inventions.

33.    Plaintiff Choe Family is a limited liability company organized under the laws of California and authorized to do business and doing business in Los Angeles, California.  At all relevant times, Choe Family, LLC held and currently holds 12% of the outstanding shares of ADC Inc. and 54.2% of the outstanding shares in Boltier.

34.    Defendant and co-conspirator HAJA is a limited liability company organized under the laws of California. HAJA is not authorized to do business because it has been suspended and inactive with the California Secretary of State since

February 6, 2019.  Notwithstanding, HAJA purports to be doing business at 3530 Wilshire Blvd., Suite 1710, Los Angeles, California 90010. HAJA purports to hold 25% of the outstanding shares in Boltier and 12.5% of the shares in ADC Inc.  HAJA is also a purported shareholder in ADC USA.

35.  Defendant and co-conspirator ADC USA is a corporation organized under the laws of California, with a principal place of business at 3731 Wilshire Blvd., Los Angeles, California 90010. It is believed that Lee has used ADC USA to obtain sizeable investments (believed to be millions of dollars) from individuals and entities who purchased shares of ADC USA.  It is further believed that ADC USA has not provided any payments to these shareholders.

36.  Defendant and co-conspirator ADC Air is a limited liability company organized under the laws of Nevada, and, on information and belief, has a principal place of business at 6605 Grand Montecito Pkwy, Suite 100, Las Vegas, NV 89149. The Secretary of State website for the State of Nevada identifies Henry Lee and Greg Roberts as managers.

37.  Defendant Lee is an individual residing at 525 N. Alpine Dr., Beverly Hills, CA 90210.  He is the Chief Executive Officer of Defendant ADC USA and a member of its board of directors.  At all relevant times, and until March 2, 2023, Lee served as the Secretary of both ADC Inc. and Boltier. Lee is the manager and majority member of Defendant and co-conspirator HAJA.  Lee is also the manager of ADC Air.  Lee is an attorney licensed to practice law in the State of California. His law office is located under Henry M. Lee Law Corporation with an office at 3731 Wilshire Blvd., Los Angeles, California 90010.

38.  Defendant and co-conspirator Pham is an individual residing at 13888 La Jolla Plaza, Garden Grove, California 92844.  From about 2015 to the present, Pham has worked at ADC USA. Pham is a Chief Operating Officer, a member of the board of directors, and a shareholder, of ADC USA.

39.  Defendant and co-conspirator Yamamori is an individual residing at

1  13888 La Jolla Plaza, Garden Grove, California 92844.  From about 2019 to the
2  present, Yamamori worked at ADC USA. Yamamori is a shareholder of ADC USA.

3      40.  Defendant and co-conspirator Jina is an individual residing at 525 N.
4  Alpine Dr., Beverly Hills, CA 90210.  Jina's business address—at 3731 Wilshire
5  Blvd., Los Angeles, California 90010—is the same as Defendant Lee's law office.  At
6  all relevant times, Jina is and has been the wife of Defendant Lee. On June 10, 2024,
7  Jina purports to be a member of the board of the directors of Boltier based on a false
8  Statement of Information filed by Defendant Shrouder.

9      41.  Defendant and co-conspirator Shrouder is an individual whose business
10  address at 3731 Wilshire Blvd., Los Angeles, California 90010 is the same as
11  Defendant Lee's law office.  On June 10, 2024, Shrouder purports to be the Chief
12  Executive Officer, Chief Financial Officer, and Secretary, and member of the board
13  of directors of Boltier based on a false Statement of Information filed by Defendant
14  Shrouder with the Secretary of State of California.  On June 11, 2024, Shrouder also
15  purports to "speak for the Board of Directors" of ADC Inc. At all relevant times,
16  Shrouder is also the Chief Information Officer of ADC USA.

17      42.  The true names and capacities of all remaining Defendants, whether
18  individual, corporate, associate or otherwise, are named herein as DOES 1 through
19  100, inclusive, are unknown to Plaintiffs who thereby sue these Defendants by those
20  fictitious names. Plaintiffs are informed and believes, and on that basis allege, that
21  each of the Defendants sued herein as a DOE is legally responsible in some manner
22  for the events and happenings referred to herein. The names, capacities and
23  relationships of DOES 1 through 100, inclusive, will be alleged by amendment to this
24  Complaint when those names are known. Whenever it is alleged herein that any act
25  or omission was also done or committed by a specifically named Defendant generally,
26  Plaintiffs intend to allege and does allege that the same act or omission was also
27  committed by each and every Defendant named herein, including the DOE
28  Defendants, both separately and in concert or conspiring with the other Defendants,

unless stated otherwise. Plaintiffs pray for leave of this Court to amend this Complaint when those names and capacities are ascertained.  Plaintiffs are informed and believe that an individual named Lucie Lee, who is believed to be affiliated with ADC USA and the named Defendants, may also be a co-conspirator. If and when discovery so confirms, she will be added as a named DOE defendant.

43.    Plaintiffs are informed and believe, and based thereon allege, that at all times relevant to the facts alleged herein, each Defendant was the agent, servant or employee of each of the other Defendants, and as such, was acting within the course and scope of such agency or employment and with the express permission of, consent to and/or ratification by Defendants, and each of them.

44.    Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants, including DOES 1 through 100, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

45.    Plaintiff Choe brings this action in his own capacity and in a derivative capacity, in the right and for the benefit of Choe Family and its members, Boltier and its members, and ADC Inc. and its members. Choe has standing to bring the derivative claims he asserts. Any requirement of a pre-suit demand upon Choe Family has either been satisfied or is excused, for reasons set forth in more detail below. Among other matters, Defendant Lee purports to act as co-manager of Choe Family, through another entity he owns and controls in full, HAJA.  HAJA is unauthorized to take any action on behalf of Choe Family.  Also, as co-manager of Choe Family, Lee purports to have veto to control the majority of the shares in ADC Inc. and Boltier, as well as interfere and block any acts by Choe to challenge Lee's actions. In light of the facts alleged herein against Lee, he cannot reasonably be expected to take appropriate corrective action for each of ADC Inc., Boltier, or Choe Family. Indeed, Lee has taken actions to attempt to prevent legal action against him and his co-conspirators. Any demand on him, directly or through HAJA, to do so would manifestly be futile.

1

## GENERAL ALLEGATIONS

2

**A. Choe, a Serial Inventor, Innovates "Alternating Direct Current"**

3

**Electricity Conversion Technology**

4        46.     Plaintiff Choe is a native South Korean, with Korean as his first

5    language. His proficiency in speaking and reading English is limited, and typically

6    relies on others to translate from English to Korean for him.

7        47.     Choe is currently 69 years old. When the LEE Scheme began in May of

8    2021, Choe was sixty-six years old. Choe has had serious health challenges

9    throughout his life. When he was only one year old, he contracted polio, and as a

10   result, was paralyzed from the waist down. He is a kidney cancer survivor. During the

11   removal of his left kidney, serious complications resulted in his clinical death.  After being

12   resuscitated, he was in a coma for 3 days. His right kidney remains functioning.  On May

13   25, 2011, he suffered his first of two severe heart attacks, both requiring stint surgery.  His

14   second heart attack occurred 5 years later.

15       48.     He routinely visits his doctor once every three months for complete blood

16   work and checkups. Although he can do many things on his own, Choe has 24-hour

17   assistance due to health and personal safety concerns.

18       49.     Despite his health challenges, Choe immersed himself in the world of

19   electronics and developed significant expertise. He spent decades working in the

20   electronics industry and served as Chairman of KTV Global Corporation in Seoul,

21   Korea. In this role, he oversaw the company's factories in Korea, Dubai, Jordan,

22   Philippines, Germany and the United States.

23       50.     In 2012 and 2013, Choe was developing a new set of inventions.  He

24   created a new means for combining and seamlessly converting the two different forms

25   of electricity—alternating current and direct current—over existing infrastructure.

26   This innovative technology would enable more ready conversion between the forms

27   of electricity and would ultimately allow for electricity to be stored and transported

28   over further distances more efficiently, among other applications.

51.     Choe and his son Alan formed Boltier, ADC Inc., and ADC USA.

52.     Boltier was a research and development company, holding the intellectual property rights related to inventions that Choe developed and/or was developing. ADC Inc. is an exclusive licensee of Boltier's intellectual property rights related to Choe's inventions. ADC USA was designed to be the operating company that raised capital through the sale of shares of ADC USA and commercialized Choe's inventions and intellectual property that Boltier and ADC Inc. held.

53.     On March 18, 2013, Choe, as inventor, filed two patent applications for Boltier for (i) "AC-DC Power Supply Device and Switching Mode Power Supply" (issued as U.S. Patent No. 9,231,437 (the "'437 Patent")) and (ii) "Alternating Current (AC)-Direct Current (DC) Power Booster and AC-DC Power Control Module for AC and DC Illuminations" (issued as U.S. Patent No. 9,462,643 (the "'643 Patent")).

54.     Similarly, on August 11, 2015, Choe, as inventor, filed a divisional patent application for Boltier for "Alternating Current (AC)-Direct Current (DC) Power Booster and AC-DC Power Control Module for AC and DC Illuminations" (issued as U.S. Patent No. 9,635,720 (the "'720 Patent")).

55.     And subsequently, on September 10, 2015, Choe, as inventor, filed a divisional patent application for "AC-DC Power Supply Device and Switching Mode Power Supply Device" (issued as U.S. Patent No. 9,893,560 (the "'560 Patent")).

56.     Choe assigned all four patents to Boltier.

57.     Choe's innovation was recently validated by NASA. Mr. Choe is recognized by several experts from NASA, the Department of Energy, Department of Defense, and the National Renewable Energy Laboratory as a premier visionary and champion for the true paradigm global transition from fossil fuels to clean sustainable energy.  One such individual stated that Choe's technology is one of the greatest advancements in the last 50 years.

**B. Choe Receives Patents for His Inventions and Develops Proprietary Products for Boltier and ADC Inc., Which ADC USA Licenses**

58.    Choe's applications were successful.  The USPTO issued patents for each of Choe's inventions on January 5, 2016 (the '437 Patent), October 4, 2016 (the '643 Patent), April 25, 2017 (the '720 Patent), and February 13, 2018 (the '560 Patent).

59.    With the patents in hand, Choe, Boltier, and ADC Inc. continued to develop proprietary applications that built on the new "alternating direct current" technology.  Choe also developed certain trade secrets related to day-night photovoltaic systems that profoundly influences the spaces of energy, health, agriculture, aquaculture, and livestock. Choe and Boltier refers to such proprietary systems as "Life Beam" technology.

60.    On February 11, 2019, Boltier filed a trademark application for its ADC ENERGY brand for "Apparatus and instruments for conducting transmission of low voltage, below 50 volts, direct current electricity, namely, direct current oscillators, direct current regulators, direct current inverters, direct current circuits, and not for use with communication equipment" (the "ADC Energy Mark").  (*See* Exhibit A [Certificate of Registration of "ADC Energy" Trademark].)

61.    That same day, Boltier also filed a trademark application for its POWER EVERYONE mark for "Home, industrial, commercial, and utility energy assessment services for the purpose of determining energy efficiency or usage management" (the "Power Everyone Mark"). (*See* Exhibit B [Certificate of Registration of "Power Energy" Trademark].)

62.    On September 3, 2019, the USPTO registered Boltier's Power Everyone Mark.

63.    On December 15, 2020, the USPTO registered Boltier's ADC Energy Mark.

64.    Boltier retained full ownership to the patents, trademarks, and related

trade secrets. On information and belief, ADC Inc. retained exclusive license rights to Boltier's four patents.

65.    To market and continue to monetize the intellectual property, on information and belief, ADC Inc. and ADC USA entered into a license agreement (the "<u>License Agreement</u>").

66.    On information and belief, the License Agreement purported to grant ADC USA a license to use and commercially exploit Boltier's four patents.

67.    On information and belief, ADC USA was required to pay ADC Inc. 25% of its gross income on a quarterly basis.

### C. The Lee Enterprise Effects Scheme to Steal Choe's "Alternating Direct Current" Technology

68.    Around the time the USPTO issued all the patents and trademarks, Lee had become the Secretary, board member, and shareholder of each of Boltier, ADC Inc., and ADC USA.  By 2020, Pham and Yamamori were working closely with Lee at ADC USA.

69.    By 2021, Choe's advancing age and deteriorating health had started to interfere with his usual day-to-day hands-on management of every minute detail of Boltier's and ADC Inc.'s operations.  As a result, Choe relied substantially on Lee whom at the time Choe trusted to carry out the companies' administrative tasks in an honest and effective manner.  Indeed, in addition to his other hats, Lee served as a lawyer for at least Choe, Choe Family, Boltier, and ADC Inc.

70.    At all times, Choe remained in charge of all strategic decisions for the companies as Chief Executive Officer and board member for Boltier and ADC Inc. He also served as an officer and chairman of the board for ADC USA.

71.    Compounding matters for Choe is that his wife of 40 years passed away in February 2021.

72.    On information and belief, starting in May 2021 and continuing to the

-15-

**COMPLAINT**

1  present, co-conspirators Lee, HAJA, Pham, Yamamori, Jina and Shrouder determined
2  to exploit Choe's vulnerability surreptitiously to wrest full ownership and control of
3  Boltier's and ADC Inc.'s intellectual property rights from Boltier, ADC Inc. and Choe
4  and transfer that to ADC USA where Lee was in charge and Choe had no real say or
5  visibility into operations, as well as attempt to take control over Boltier and ADC Inc.
6  to frustrate any efforts to hold them accountable for their fraudulent conduct.

7  73.  On information and belief, Lee, HAJA, Pham, Yamamori, Jina and
8  Shrouder accomplished their ruse through a series of carefully calculated, albeit
9  illegal steps.

10

11  *Step One: Lee attempts to gain control of Choe Family's interest in ADC Inc.*

12  74.  On May 29, 2021, Lee convinced Choe to reorganize Choe Family LLC
13  by giving Lee's company, HAJA, 25% ownership and making Lee a managing
14  member with equal power to Choe, who continued to hold 75% of the company.  Lee
15  prepared drafts of both an operating agreement between HAJA and Choe (the "Choe
16  Family Operating Agreement," attached hereto as Exhibit C) and an "Agreement
17  Confirming Hun Yong Choe Transfer of ADC Energy, Inc. Shares to Choe Family,
18  LLC and Distribution of Choe Family LLC Membership Units" (the "ADC Inc.-Choe
19  Family Shares Transfer Agreement," attached hereto as Exhibit D).

20  75.  According to Lee as communicated to Choe at the time, and as reflected
21  in his draft of each agreement, the purpose of entering into these agreements was to
22  "ensure clarity of mission and goals in decision making, business operations,
23  consistency and perpetuity and to provide both Hun Yong Choe and Henry Lee
24  incentive and compensation for past services rendered which are substantial."
25  (Exhibit D [ADC Inc.-Choe Family Shares Transfer Agreement].)

26  76.  On May 29, 2021, while Choe was still grieving the death of his wife,
27  Lee deceived Choe into signing both the Choe Family Operating Agreement and the
28  ADC. Inc.-Choe Family Shares Transfer Agreement.

77. The Choe Family Operating Agreement purported to appoint both Choe and HAJA/Lee as co-managers of the entity and required unanimous consent to engage in all aspects of Choe Family's business operations, including to initiate lawsuits. (*See id.* at pp. 4-5 & 14.) The ADC Inc.-Choe Family Shares Transfer Agreement purported to transfer all of Choe's shares in ADC Inc.—25% of all outstanding shares—to Choe Family, thereby diluting Choe's ownership interest in and control of ADC Inc.

78. The effect of these two agreements is that Lee would purportedly become in charge of Choe Family's interest in ADC Inc. and Boltier, and by extension, the Boltier IP.

79. With co-management authority in Choe Family (and the attendant control of its shares in ADC Inc.) and with unanimous consent necessary for its major decisions, Lee, through HAJA, would obtain unprecedented access and control over all four critical entities (ADC Inc., Boltier, ADC USA, and Choe Family).

80. With respect to Choe Family, Lee/HAJA's unanimous consent right would endow him with powerful veto to purportedly interfere with ***and block*** any acts by Choe to challenge Lee's actions.

81. Additionally, with purported control of Choe Family's shares in each of the entities, Lee/HAJA would purportedly possess a ***controlling majority of the shares in all three entities***:

- Boltier (54.2% (Choe Family's stake, through HAJA's control of Choe Family) + 25% (HAJA));
- ADC, Inc. (12% (Choe Family's stake, through HAJA's control of Choe Family) + 12.5% (HAJA) + 74.5% (Boltier's stake, through HAJA's control of Choe Family)); and
- ADC USA (57.0875% (ADC Inc.'s stake, through HAJA's control of Choe Family)).

82. However, Lee's scheme ultimately failed as neither agreement was

-17-
**COMPLAINT**

actually effective. As of May 29, 2021, HAJA was not authorized to do business because it had been suspended and inactive with the California Secretary of State since February 6, 2019. Thus, pursuant to California Revenue and Taxation Code section 23304.1(a) both the Choe Family Operating Agreement and the ADC Inc.-Choe Family Shares Transfer Agreement were ineffective.  (*See* Cal. Rev. & Tax Code § 23304.1(a) ("[e]very contract made in this state by a taxpayer during the time that the taxpayer's powers, rights, and privileges are suspended or forfeited pursuant to Section 23301, 23301.5, or 23775 shall, subject to Section 23304.5, be voidable at the request of any party to the contract other than the taxpayer.").)

*Step Two: Lee fraudulently transfers Boltier's intellectual property to himself through a forged assignment.*

83.     On information and belief, in January 2023, ADC Inc. was a party to the License Agreement with Boltier, which granted ADC Inc. exclusive rights to Boltier's four patents. Similarly, ADC USA was a party to the License Agreement with ADC Inc., which sublicensed those four patents in exchange for 25% of ADC USA's gross income generated from its commercial exploitation of the licensed patents.

84.     Also in January 2023, Boltier's board of directors comprised of only three members—Choe, his son Alan Choe, and Lee (as Secretary).  Simultaneously, Lee was the Chief Executive Officer of ADC USA and sat on its board of directors.

85.     Notwithstanding the existence of the License Agreement, Lee sought to seize Choe's and Boltier's intellectual property for ADC USA outright through his board position at Boltier and executed a plot to do so.

86.     On or about January 30, 2023, in his capacity as Secretary of Boltier's three-man board, Lee drafted what purported to be an "Action by Unanimous Written Consent of the Board of Directors of Boltier R&D, Inc. Effective January 30, 2023."

87.     The draft document made several representations, including the following.

- A majority of the board had met on each of January 24, 25, and 26, 2023 to discuss a restructuring of Boltier.
- "All ADC entities agree, authorize and instruct the creation of a separate entity to be created, formed and controlled at all times by Henry Lee."
- "Choe and all ADC entities agree to transfer, assign and grant joint rights, title, interest and control of all intellectual property, patents, trademarks, copyrights, trade secrets relating to or arising from 'alternating direct current' technology embodied in all patents in the name of Hun Yong Choe, Boltier R&D and Boltier R&D, Inc. ("ADC IP"), to Henry Lee and/or his assignee new entity to be formed within the scope of the agreement."
- "All ADC entities likewise shall retain all joint rights, title, interest and control in the ADC IP, to be shared joint and several with Henry Lee and/or his new assignee entity.
- "ADC entities and Henry Lee and/or his assignee entity shall not sell, transfer, assign, grant, share, pledge or otherwise change their rights, title, interests in the ADC IP, except Henry Lee is authorized to transfer to the new assignee entity, which shall at all times be within his control."
- "Henry Lee agrees to a licensing structure for use of the ADC IP to be determined in separate agreement."
- "After notarized execution of all documents to consummate the restructuring and transfer of ADC IP, Henry Lee shall resign from all officer and board positions in all ADC entities."
- "A further document setting for the terms of the agreement outlined above shall be prepared and executed by the duly appointed officers and directors to formalize this transaction."

(*See* Exhibit E at 12-13 [Expert's report of Handwriting Expert Reed Hayes].)

88.     Each of the above representations in the draft document was problematic for a host of reasons.  Among them are:

- there were no board meetings on January 24, 25, 26, or 30 to discuss the issues contained in the draft document;

- given that the document contemplated a disposition of both Boltier's and ADC Inc.'s full intellectual property rights—substantially all of their respective assets—Choe would have had to consult fully with his other board member Alan and with the shareholders of each entity to obtain their input prior to agreeing to such a transaction;

- there was no reference to, or discussion about the effect of the ADC Inc. - Boltier Licensing Agreement;

- there was no indication that ADC USA's full board of directors or shareholders had or would authorize any kind of assignment, in part or in full, of intellectual property rights over which ADC USA had a license **to Lee**;

- the draft document purported to bind "all ADC entities" (including ADC USA) to a transaction without the input of the rest of ADC USA's board or shareholders;

- Lee never provided drafts of any document "further setting forth the terms" of the transactions contemplated in the draft, much less presented those documents for signature or notarization as called for in the draft;

- Lee never resigned as an officer or board member of ADC USA, nor did he resign as a manager from Choe Family, all of which are an ADC entity; and

- the assignment fails for a complete lack of consideration because any potential compensation, which there has been none, for the assignment of rights is completely arbitrary and left in the hands of Lee.

89.    In addition, the draft document contained signature lines for each of Choe and Alan as the members of Boltier's board of directors.  (*See id.*)

90.    It also contained a signature line for Lee in his capacity as the third member of Boltier's board, notwithstanding that the content of the document benefited him solely and caused the entire set of transactions being considered to be

an interested party transaction vis-à-vis Lee such that it created an ethical and legal conflict of interest that should have been fully disclosed by attorney Lee (who undoubtedly was aware of the conflict of interest and purposefully failed to disclose it and seek waivers from the shareholders).

91.    On February 9, 2023, Lee emailed Choe revised resolutions, removing Alan's signature line.

*92.*    On February 10, 2023, Lee's executive assistant, Lucie Lee ("<u>Lucie</u>") emailed Choe purported translations of Lee's revised resolutions. Plaintiffs are informed and believe that Lucie, who is believed to be affiliated with ADC USA and the named Defendants, may also be a co-conspirator. If and when discovery so confirms, she will be added as a named DOE defendant.

93.    On or about February 10, 2023, Pham and Yamamori visited Choe, pressuring him to sign the resolutions. At the time, Choe did not appreciate the fraudulent scheme being perpetrated by Lee and his co-conspirators.

94.    On February 13, 2023, Pham sent Choe updated resolutions for Boltier containing three signature lines, one each for Choe, Lee, and Alan. The updated resolutions included purported translations from English to Korean.

95.    Unrelenting, on the same day, Pham sent Choe a final draft without the Korean translation for all three resolutions. These "final" resolutions had a signature line for Alan to sign.

96.    On the same day, Choe signed the "final" resolutions without fully understanding and appreciating the legal ramifications of what he signed as Lee was legal counsel for Choe, Boltier, and ADC, Inc. and Lee and his co-conspirators were engaged in a pressure campaign to get Choe to sign to which he relented.  Choe also signed with the expectation and understanding that Alan, his son and fellow board member, would further review and provide input on these documents. Choe trusted Lee and his co-conspirators to do what is right for Choe Family, Boltier, and ADC Inc. and their respective shareholders. Choe then emailed the executed resolutions to

1  Pham.

This action may be signed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one instrument. This action was executed as of January 30, 2023 and was effective as of the date first set forth above.

Hun Choe

Henry Lee

Alan Choe

(*See id.*)

97.    Lee and his co-conspirators deceived Choe to sign the draft document by misrepresenting its contents and purpose, and the effect of his signature on the draft. Given that Lee is an attorney and was counsel for Choe, Boltier, ADC Inc., and ADC USA, Choe's reliance on Lee's misrepresentations was reasonable as Choe was unaware of, and no reason to suspect, Lee's ulterior and deceptive motive.

98.    In his vulnerable emotional state and due to his full lack of understanding of the English language and the import of what Lee said, and reasonably believing at the time that Lee was operating in the best interest of all involved, Choe signed the draft document believing Lee statements that it was merely a draft, not a final agreement and subject to Alan's review and input.

99.    Choe never intended for his signature on the draft document to be final or binding on anything. This was because he understood that his son Alan would also have an opportunity to review and later discuss the document with him. Lee also presented Choe with a number of other documents to sign. But Choe did not sign those documents, and asked to confer with Alan and Choe's own counsel about them.

100.    Importantly, there was no board meeting nor was there a unanimous vote

of disinterested parties.  To Choe's understanding, at bare minimum, only non-Lee board members—for Boltier and ADC Inc., namely Choe and Alan—of all three entities would be authorized to consider (and reject) any kind of disposal of intellectual property to Lee, given Lee's obvious conflict of interest.  Furthermore, it would be necessary for all the shareholders of all relevant entities to be involved in such a decision and vote.

101.   After receiving Choe's signature, on the same day, Pham sent Choe an email with scanned copies of the three resolutions containing Lee's signature. It was missing Alan's signature.

102.   On February 20, 2023, Lee emailed Alan the documents signed by Lee and Choe, and instructing him to "sign and return. Or write 'Resigned' and return asap."

103.   Similarly, on February 23, 2023, Choe emailed Alan the three resolutions hoping to get his input on these three documents.

104.   Upon reviewing the resolutions, Alan refused to sign.

105.   But that did not deter Lee and his co-conspirators from pursuing their fraudulent scheme. Instead, they proceeded full steam with their plan.

106.   Lee never raised the issue again. Then, on or around March 2, 2023, Lee purported to resign from his position as Secretary of each of Boltier and ADC Inc.

107.   On March 11, 2023, and unbeknownst to Choe and Alan at that time, Lee filed a first set of patent assignments with the USPTO via its online portal for submitting assignment of patents records for each of the '437, '643, '720, and '560 Patents.  (*See* Exhibit F [USPTO Bibliographic Data on Assignment Records] and Exhibit G [Assignments with Cover Pages on all Four Patent, filed with USPTO on March 11, 2023]).

108.   Each of the assignments stated that Boltier had assigned each of the patents to Lee himself.  (*See id.*)

109.   Moreover, each assignment purported to be an "Action by Unanimous

-23-
**COMPLAINT**

Written Consent of the Board of Directors of Boltier R&D, Inc. Effective January 30, 2023" (the "<u>Forged Assignment</u>").

110.   The Forged Assignment was different from the version that Lee had presented to Choe weeks prior.

111.   In particular, it vastly expanded the scope of intellectual property rights that were contemplated by the draft. This Forged Assignment stated that:

> Hun Choe and all ADC entities agree to transfer, assign and grant joint rights, title, interest and control . . . of all intellectual property, patents, trademarks, copyrights, trade secrets constituting or relating to "alternating direct current" technology (ADC IP) including but not limited to: (l) all the property, right, title and interest in and to the Patents and Trademarks including all common law rights connected therein together with the registrations therefor for the United States and throughout the world together with the goodwill of the business in connection with which the Patents and Trademarks are used and which is symbolized by the Trademarks; (2) all income, royalties, and damages hereafter due or payable to Assignor with respect to the Trademark, including without limitation, damages, and payments for past or future infringements and misappropriations of the Patents and Trademarks; and (3) all rights to sue for past, present and future infringements or misappropriations of the Trademark, **to Henry Lee and/or his assignee.**

(*See id.* at page 1 (emphasis added).)

112.   It also contained only two signature lines—one for Choe and one for Lee. There was no signature line for Alan. Moreover, Choe's signature was reproduced on the signature page—without Choe's authorization—along with a signature for Lee.

113.   Each of the assignments stated that Lee had assigned each of the patents to ADC USA.  (*See id.*)

This action may be signed in one or more counterparts, each of which shall be deemed an original and all of which shall constitute one instrument.  This action was executed as of January 30, 2023 and was effective as of the date first set forth above.



Hun Choe

Henry Lee

114.   Choe had ***never*** seen this Forged Assignment. Like the draft, the Forged Assignment did not include any of the notarized documents that it referred to evidencing the transaction contemplated.

115.   Then, on March 21, 2023, and unbeknownst to Choe at that time, Lee filed a second set of patent assignments with the USPTO via its online portal for submitting assignment of patents records for each of the '437, '643, '720, and '560 Patents.  (*See* Exhibit F & Exhibit H [Assignments with Cover Pages on all Four Patent, Filed with USPTO on March 21, 2023].)

116.   Each of the assignments stated that Lee had assigned each of the patents to ADC USA.  (*See id.*)

*Step Three: Pham and Yamamori , working behind the scenes with Lee, sue Boltier, ADC Inc., Choe, and others for baseless employment violations.*

117.   On March 9, 2023, Pham and Yamamori falsely filed a lawsuit against each of Boltier, ADC, Inc., Choe, and others, seeking to recover almost $1 million in unpaid wages. *See Johnny Pham et al. v. ADC Energy Inc. et al.*, Los Angeles Superior Court, Case No. 23STCV05253. Neither Pham nor Yamamori was ever an employee of ADC Inc. or Boltier. They were always exclusively ADC USA workers

1   hired by Lee.

2       118.   Lee himself is not a party to the action, although he was at all relevant

3   times a secretary and board member of both Boltier and ADC Inc. Notwithstanding

4   that Pham and Yamamori worked for and continue to work for ADC USA, they did

5   not sue ADC USA or Lee.

6       119.   Upon information and belief, Lee has orchestrated the employment

7   action against Choe, ADC Inc. and Boltier, including advising Pham and Yamamori

8   as their counsel behind the scenes since they filed the case and in violation of his

9   previous rolls as counsel for Choe and counsel, officer, and director for ADC Inc. and

10  Boltier. For instance, as recently as May 22, 2024, Pham and Yamamori filed a

11  Request for Judicial Notice in the case.  The metadata reveals that "Henry Lee" was

12  the "Author" of the document:

13
14
15
16
17
18
19
20
21
22
23
24



25      120.   Moreover, in that litigation, Pham and Yamamori produced confidential

26  bank account statements for Boltier and ADC Inc.  On information and belief, the

27  only way Pham and Yamamori could have obtained those confidential records is from

28  Lee—Boltier's and ADC Inc.'s former secretary. Lee provided such confidential

records to Pham and Yamamori in violation of his continuing duty of confidentiality to Boltier and ADC Inc., as well as his ethical obligations as prior counsel for those companies.

121.   Additionally, on June 5, 2024, Pham purported to file an application for a writ of attachment on Choe's properties, disclosing pictures containing Boltier's "Life Beam" trade secrets that were unlawfully misappropriated by Pham, Yamamori and Lee.

122.   Again, this was orchestrated by Lee as the metadata of Pham's declaration in support of the writ reveals that "Henry Lee" was the "Author" of the document as shown below:

*Step Four: Lee transfers rights from ADC USA to ADC Air and aided by Pham and Yamamori.*

123.   On or about June 27, 2023, Lee along with his co-conspirators formed ADC Air in the State of Nevada.

124.   On or about June 29, 2023, on information and belief, Lee along with his co-conspirators, registered the domain name www.adcairglobal.com.

125.   Then, on or about December 16, 2023, Lee announced in an ADC USA shareholder meeting that he had licensed ADC technology to ADC AIR. This meeting was memorialized in company minutes, dated January 17, 2024.

126.   Notably, in the same meeting, Lee praised Pham and Yamamori for their continued support in the day-to-day operations. Lee also promoted Pham to Chief of Operations.

127.   According to ADC USA's website, Pham's duties include: (a) technology and product development; (b) supply chain and manufacturing oversight; (c) regulatory compliance management; (d) technology architecture operations; (e) strategic planning and operational oversight; and (f) certified ADC technologist and quality control.

128.   On information and belief, both Yamamori and Pham supported and continue to support Lee in the day-to-day implementation of Lee's fraudulent scheme, including but not limited to, misappropriation of Boltier's trade secrets and the unauthorized disclosure of such trade secrets to ADC AIR, among others.

*Step Five: Lee intimidates Choe's former counsels to render Choe defenseless in the sham employment litigation and attempts to block legal action against Lee.*

129.   On or about May 22, 2024, Lee sent an email to Choe as well as his former counsel in the employment litigation, demanding as managing member of Choe Family the following:

1.  A copy of all retainer agreements, disclosures, waivers of conflicts for Boltier, ADC Energy, Hun Choe (For Pentis, Fred Lee, and all other attorneys representing you and/or the entities);

2.  Attorney client trust account ledger, client accounting, payments, balance sheets, invoices, and copies of all checks/payments/wires, especially documentation of the source of the funds paid to any and all attorneys from or on behalf of Boltier, ADC Energy, Hun Choe.

3.  Copies of the entire client files including electronic files, including all documents provided to all attorneys for the Pham/Yamamori case.

4.  All communications with Hun Choe and/or attorneys representing Boltier, ADC Energy, LB entities, and/or anyone acting on Hun Choe behalf or in concert with him.

5.  All documents that mention, refer or reflect to all of the "LB" corporate entities with which Hun Choe is an officer, director, agent, including but not limited to all corporate records, shareholder ledgers, financial information.

130.  On information and belief, Lee sought to interfere with Choe's defense and block any legal action brought against Lee and his co-conspirators for their fraudulent conduct.

131.  Lee also accused Choe and his former employment attorneys of malpractice, breach of fiduciary duty and fraud to intimidate them and drive them

Request is further made on the board of Boltier and ADC Energy that both corporate entities take action to investigate, audit and account for all financial transactions perpetrated by Hun Choe, including but not limited to taking action to investigate and prosecute a malpractice, breach of fiduciary duty, and fraud case against Carl Pentis, Fred Lee and Hun Choe; and taking action to investigate and prosecute a lawsuit for breach of fiduciary duty, fraud, violation of trade secrets, breach of contract and accounting, among other claims against Hun Choe arising from among other things, embezzlement of funds, failure to pay wages, and misappropriation of trade secrets in conspiracy with his LB entities and the LB shareholders/officers/directors.

away, leaving Choe defenseless in the employment action orchestrated by Lee:

*Step Six: Lee uses his orchestrated writ of attachment to purportedly acquire Choe's interest in Boltier and ADC Inc. in a hostile takeover*

132.   After orchestrating Pham's purported writ of attachment, which the state court has not rendered a decision on, Lee purported to purchase Choe's membership interest in Choe Family LLC for the sum of $1 in accordance with Section 2.7 of the operating agreement of Choe Family—confirming that his scheme to defraud Choe extended at least as far back as when he purported to join Choe Family LLC. A true and correct copy of Lee's communication to Choe is attached as Exhibit I ([June 10, 2024 Letter from Lee to Choe]).

133.   Then, in a transparent attempt to prevent Choe from suing and exposing Lee's and his co-conspirators of their criminal scheme and enterprise, Lee enlisted his co-conspirators Jina and Shrouder to replace Choe from the board of Boltier and ADC Inc. In doing so, on June 10, 2024, Shrouder filed a false Statement of Information with the California Secretary of State purporting to replace Choe with Jina and Shrouder for Boltier. (*See* Exhibit J [June 10, 2024 False Statement of Information filed by Shrouder]. Shrouder subsequently sent an email to Choe proclaiming that he is "newly appointed to and speak for the Board of Directors" of ADC Inc. and that Choe is terminated from all positions. There was no meeting or vote of shareholders on the purported election of Jina and Shrouder to the Board of Boltier. Nor was there a meeting or vote of shareholders on the purported appointment of Shrouder and termination of Choe.

134.   To correct the fraud, Choe filed a corrected State of Information with the California Secretary of State reinstating him as Director, President and CEO of Boltier, and removing the fraudsters.

1

### D.  Choe Uncovers the Scam

2      135.   On or about March 24, 2023, notwithstanding their employment with

3   Lee at ADC USA, Pham and Yamamori served Choe, ADC Inc. and Boltier their

4   lawsuit for alleged labor law violations. In his attempt to get to the bottom of their

5   allegations, Choe started seeking relevant records from Lee.

6      136.   Choe also sought corporate governance records from Lee, the former

7   Secretary of ADC Inc. and Boltier by this time. Lee was the individual that retained

8   the originals and copies of all incorporation documents, bylaws, board minutes,

9   resolutions, operating agreements, contracts, human resources records, tax filings,

10  and other critical records for the entities.

11     137.   Lee refused to give Choe access to any of the documents he requested.

12  Lee even concealed and/or blocked Choe's access to documents regarding Boltier's

13  and ADC Inc.'s intellectual property, including information on their patents,

14  trademarks, and other trade secrets.

15     138.   He also did not invite or make Choe aware of any board or shareholder

16  meetings that ADC USA was having, including an apparent meeting on

17  March 11, 2023—the same day Lee filed the patent assignments with the USPTO.

18     139.   Notwithstanding that Pham had sued Choe, on April 4, 2023, he emails

19  Choe to inquire about the implementation of Boltier's misappropriated trade secrets

20  on an ADC USA project.

21     140.   At the same time, Lee was telling ADC USA shareholders in writing

22  that Choe was missing in action.  On April 19, 2023, Lee misrepresented to ADC

23  USA's shareholders that Choe had gone completely unresponsive to any requests

24  from him and Pham for "nearly two months".  (Exhibit K [April 13, 2023 Letter to

25  shareholders].)

26     141.   Lee informs the shareholders that he "received communications from

27  an attorney Hun Choe had to hire because Hun Choe is being sued for failing to pay

28  wages to employees of Boltier R&D, Inc. and ADC Energy, Inc. This leaves me

1    with no choice but to remove Hun Choe as director and officer from the public

2    records of ADC Energy USA, Inc."

3           142.   Lee conveniently did not disclose that Pham and Yamamori were the

4    ones that sued Choe, Boltier and ADC Inc., and that Lee himself is orchestrating and

5    guiding Pham's and Yamamori's suit against Choe, Boltier and ADC Inc.

6           143.   Nevertheless, Lee purported to unilaterally remove Choe as an officer

7    and chairman of the board of ADC USA.  Choe had no authority to do so without a

8    vote of the full board of directors of ADC USA and full shareholder involvement.

9           144.   In late 2023, Choe started his own independent investigation.  He began

10   to conduct public records searches himself.

11          145.   Choe found Lee's online patent assignment filings and saw the Forged

12   Assignment.  He had no idea Lee had made these filings until this point.

13          146.   Choe was shocked at what he had discovered.  He knew he never

14   signed the Forged Assignment and could not comprehend how his signature could

15   have appeared on the document.

16          147.   Choe engaged the services of Reed Hayes, a certified handwriting and

17   documents examiner.

18          148.   Mr. Hayes conducted a thorough forensic exercise on each of the draft

19   unanimous consent (the "source document"), the Forged Assignment, and other

20   samples of Choe's signature on other documents.  (*See* Exhibit E [Hayes' Expert

21   report].)

22          149.   Mr. Hayes concluded Choe's signature on the Forged Assignment was

23   in fact doctored:  "Based on the above findings and observations, **I am of the**

24   **opinion the questioned document was manufactured from the source**

25   **document.**"  (*See* Exhibit E at 4 (emphasis in original).)

26          150.   More recently, in May 2024, Choe also discovered for the very first

27   time that Lee had also filed assignments for Boltier's registered trademarks.

28   Apparently, Lee filed assignments of Boltier's registered trademarks in ADC

-32-

**COMPLAINT**

ENERGY and POWER EVERYONE with the USPTO through its online internet portal.  In the assignment submissions, he attached the Forged Assignment as evidence of the assignment.  (*See* Exhibits M, N & O [Trademark Assignments and Bibliographic Data].)Similarly, Choe learned that on March 21, 2023, Lee filed another assignment of each of the ADC ENERGY and POWER EVERYONE trademarks from himself to ADC USA through the USPTO online portal.

151.   Choe also learned in May of 2024 that, on September 23, 2023, Lee filed a new trademark application for ALTERNATING DIRECT CURRENT, which Boltier has common law rights thereto.  (See Exhibit L [Trademark Application for "Alternating Direct Current" Mark].)

152.   Left with no alternatives, and in light of the scope, depth, and seriousness of Lee's fraud breach of fiduciary duties to Choe, Boltier, and ADC Inc., as well as his co-conspirators, Choe now seeks the Court intervention to protect the interests of each of Boltier, ADC Inc., Choe Family, and their respective shareholders and members.

## CLAIMS FOR RELIEF

## COUNT I: FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)
### Boltier Against ADC USA, ADC Air, HAJA, Lee, Pham, Yamamori, Shrouder, and DOES 1 through 100

153.   Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

154.   Boltier is the true and correct owner of the trademarks ADC ENERGY and POWER EVERYONE marks and the registrations related thereto.

155.   Defendants ADC USA, ADC Air, HAJA, Lee, Pham, Yamamori, Shrouder, and DOES 1 through 100 have engaged in, and continue to engage in, the wrongful exploitation of Boltier's ADC ENERGY and/or POWER EVERYONE

-33-
**COMPLAINT**

marks.

156.   Defendants have also engaged in, and continue to engage in, the wrongful exploitation of ADC AIR mark in a manner that is confusingly similar to Boltier's registered ADC ENERGY mark. Notably, ADC AIR is substantially similar in appearance, sound, meaning and/or commercial impression to ADC ENERGY.

157.   Defendants' unauthorized use in commerce of ADC ENERGY and/or POWER EVERYONE marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Defendants' goods and services, and is likely to cause consumers to believe, contrary to fact, that Defendants' goods and services are sold, authorized, endorsed, or sponsored by Boltier.

158.   Defendants are not affiliated with, connected with, endorsed by, or sponsored by Boltier. Nor are their goods or services approved or authorized by Boltier. Lee's fraudulent transfer of Boltier's trademark registration was illegal and unauthorized.

159.   Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

160.   Defendants have committed the foregoing acts of infringement with full knowledge of Boltier's rights in ADC ENERGY and/or POWER EVERYONE and with the willful intent to cause confusion and trade on Boltier's goodwill.

161.   Defendants' conduct is causing immediate and irreparable harm and injury to Boltier, and to its goodwill and reputation, and will continue to both damage Boltier and confuse the public unless enjoined by this court. Boltier has no adequate remedy at law.

162.   Boltier is entitled to, among other relief, injunctive relief and an award of actual damages, Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

1

2  **COUNT II: TRADE SECRET MISAPPROPRIATION (18 U.S.C. § 1836)**

3  **Boltier and ADC Inc. Against ADC USA, ADC Air, HAJA,**

4  **Lee, Pham,  Yamamori, Shrouder and DOES 1 through 100**

5      163.    Plaintiffs hereby incorporate by reference herein each of the preceding

6  allegations.

7      164.    Through years of investing time, hard work, and substantial investment

8  of capital, under Choe's leadership and innovation, Boltier has developed trade

9  secrets and maintained confidential information that constitute trade secrets pursuant

10 to the Defend Trade Secrets Act, codified at 18 U.S.C. § 1832 et seq. These trade

11 secrets include, but not limited to, design, development, testing, evaluation, and

12 certification of alternating direct current technology, including proprietary

13 information on a safety module installed with the patented products to capture

14 photovoltaic (PV) power without damaging the chargers.

15     165.    These trade secrets derive independent economic value from not being

16 generally known to the public or to other persons who can obtain economic value

17 from their disclosure.

18     166.    Defendant ADC USA, along with its employees Lee, Pham, and

19 Yamamori, were provided access to the trade secrets in connection with the

20 commercialization of patented products sublicensed by ADC Inc. under Boltier's

21 four patents. Lee also had access to such trade secret information by virtue of his

22 position as former secretary of Boltier and ADC Inc.

23     167.    On information and belief, the license agreements required ADC Inc.

24 and ADC USA to maintain the secrecy of the trade secrets, instruct their employees,

25 agents and contractors to do the same, and require such employees, agents and

26 contractors to acknowledge the non-disclosure of such secret information.

27     168.    Lee knew that such trade secret information could not be used or

28 disclosed without the prior consent of Boltier. With this knowledge, Lee willfully

and maliciously conspired to, and did, misappropriate Boltier's trade secrets through improper means. He used the forged assignment to fraudulently transfer the trade secrets to himself, then to ADC USA, and to ADC Air.

169.   Lee, and any fellow conspirators, including Pham, Yamamori, Shrouder, ADC Air and DOES 1-100, knew or had a reason to know that Boltier's confidential information are trade secrets, was acquired by improper means.

170.   ADC Air knew or had reason to know that the proprietary information it received from Lee, Pham, Yamamori, Shrouder, and DOES 1-100, is and was trade secrets that was acquired from Boltier by improper means, that Lee, Pham, Yamamori, Shrouder, and DOES 1-100, used improper means to acquire the proprietary information, and that Lee, Pham, Yamamori, and DOES 1-100 acquired the proprietary information under circumstances that gave rise to a duty to maintain its secrecy. On information and belief, ADC Air is implementing elements of the Boltier's "Life Beam" technology in its products.

171.   Pham's and Yamamori's misappropriation of Boltier's trade secrets was further confirmed in their writ of attachment on Choe's assets, disclosing elements of the "Life Beam" technology in Pham's declaration in support of the writ.

172.   By committing the actions described above, Defendants have misappropriated, and continue to misappropriate, Boltier's trade secrets, to the substantial detriment of Boltier and in violation of the Defend Trade Secrets Act (DTSA), 18 U.S.C. § 1836 et seq. For example, on April 4, 2023, after Lee's fraudulently transfer of Boltier's trade secrets to himself, Pham emailed Choe requesting additional instructions to implement and use Boltier's proprietary information on a safety module installed with the patented products for capturing photovoltaic (PV) power without damaging the chargers.

173.   Unless permanently enjoined, Defendants will continue to use Boltier's trade secrets to unfairly compete with Boltier and to undermine Boltier's established

and prospective business. The damages Defendants have inflicted and continue to inflict are substantial and irreparable, such that monetary relief would not provide an adequate legal remedy. Pursuant to 18 U.S.C. 1836(b), Boltier seeks injunctive relief or other appropriate remedies enjoining further actual and/or threatened misappropriation of Boltier's trade secrets, and ordering Defendants to relinquish possession, custody, and control of Boltier's trade secret information.

174.   As a direct and proximate result of Defendants' actions, Boltier has suffered injuries and damages in excess of the jurisdictional limit of this Court, including lost profits, lost licensing revenue, diminished valuation, unjust enrichment based upon value of the misappropriated property, actual loss caused by the misappropriation of the trade secrets, and other damages, to be ascertained at trial, in accordance with 18 U.S.C. § 1836(b)(3)(B).

175.   To the extent Boltier's actual damages and Defendants' unjust enrichment are not reasonably ascertainable or subject to proof, Boltier is entitled to a reasonable royalty for the use of such trade secrets in accordance with 18 U.S.C. § 1836(b)(3)(B).

176.   On information and belief, Defendants' misappropriation and/or misuse of Boltier's trade secrets was and is willful and malicious and entitles Boltier to recovery of double damages and reasonable attorneys' fees and costs, pursuant to 18 U.S.C. § 1836(b)(3)(C) & (D).

## COUNT III: TRADE SECRETS MISAPPROPRIATION
## (CIVIL CODE § 3426)
### Boltier and ADC Inc. Against ADC USA, ADC Air, HAJA,
### Lee, Pham, Yamamori, Shrouder, and DOES 1 through 100

177.   Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

178.   Through years of investing time, hard work, and substantial investment

of capital, under Choe's leadership and innovation, Boltier has developed trade secrets and maintained confidential information that constitute trade secrets pursuant to the Uniform Trade Secrets Act, codified at California Civil Code § 3426 et seq. These trade secrets include, but not limited to, design, development, testing, evaluation, and certification of alternating direct current technology, including proprietary information on a safety module installed with the patented products to capture photovoltaic (PV) power without damaging the chargers.

179.   These trade secrets derive independent economic value from not being generally known to the public or to other persons who can obtain economic value from their disclosure.

180.   Defendant ADC USA, along with its employees Lee, Pham, Yamamori, and Shrouder were provided access to the trade secrets in connection with the commercialization of patented products sublicensed by ADC Inc. under Boltier's four patents. Lee also had access to such trade secret information by virtue of his position as former secretary of Boltier and ADC Inc.

181.   On information and belief, the license agreements required ADC Inc. and ADC USA to maintain the secrecy of the trade secrets, instruct their employees, agents and contractors to do the same, and require such employees, agents and contractors to acknowledge the non-disclosure of such secret information.

182.   Lee knew that such trade secret information could not be used or disclosed without the prior consent of Boltier. With this knowledge, Lee willfully and maliciously conspired to, and did, misappropriate Boltier's trade secrets through improper means. He used the forged assignment to fraudulently transfer the trade secrets to himself, then to ADC USA, and to ADC Air.

183.   Lee, and any fellow conspirators, including Pham, Yamamori, Shrouder, ADC Air, and DOES 1-100, knew or had a reason to know that Boltier's confidential information are trade secrets, was acquired by improper means.

184.   ADC Air knew or had reason to know that the proprietary information

it received from Lee, Pham, Yamamori, and DOES 1-100, is and was trade secrets that was acquired from Boltier by improper means, that Lee, Pham, Yamamori, and DOES 1-100, used improper means to acquire the proprietary information, and that Lee, Pham, Yamamori, Shrouder, and DOES 1-100 acquired the proprietary information under circumstances that gave rise to a duty to maintain its secrecy. On information and belief, ADC Air is implementing elements of the Boltier's "Life Beam" technology in its products.

185.   Pham's and Yamamori's misappropriation of Boltier's trade secrets was further confirmed in their writ of attachment, disclosing elements of the "Life Beam" technology in Pham's declaration in support of the writ.

186.   By committing the actions described above, Defendants have misappropriated, and continue to misappropriate, Boltier's trade secrets, to the substantial detriment of Boltier. For example, on April 4, 2023, after Lee's fraudulently transfer of Boltier's trade secrets to himself, Pham emailed Choe requesting additional instructions to implement and use Boltier's proprietary information on a safety module installed with the patented products for capturing photovoltaic (PV) power without damaging the chargers.

187.   Unless permanently enjoined, Defendants will continue to use Boltier's trade secrets to unfairly compete with Boltier and to undermine Boltier's established and prospective business. The damages Defendants have inflicted and continue to inflict are substantial and irreparable, such that monetary relief would not provide an adequate legal remedy. Pursuant to Civil Code § 3426.2, Boltier seeks injunctive relief or other appropriate remedies enjoining further actual and/or threatened misappropriation of Boltier's trade secrets, and ordering Defendants to relinquish possession, custody, and control of Boltier's trade secret information.

188.   As a direct and proximate result of Defendants' actions, Boltier has suffered injuries and damages in excess of the jurisdictional limit of this Court, including lost profits, lost licensing revenue, diminished valuation, unjust

1   enrichment based upon value of the misappropriated property, actual loss caused by

2   the misappropriation of the trade secrets, and other damages, to be ascertained at

3   trial, in accordance with Civil Code § 3426.3(a).

4       189.   To the extent Boltier's actual damages and Defendants' unjust

5   enrichment are not reasonably ascertainable or subject to proof, Boltier is entitled to

6   a reasonable royalty for the use of such trade secrets in accordance with Civil Code

7   § 3426.3(b).

8       190.   On information and belief, Defendants' misappropriation and/or misuse

9   of Boltier's trade secrets was and is willful and malicious and entitles Boltier to

10  recovery of double damages and reasonable attorneys' fees and costs, pursuant to

11  Civil Code §§ 3426.3(c) & 3426.4.

12

13              **COUNT IV: VIOLATION OF RICO (18 U.S.C. § 1962)**

14      **Choe, Boltier, ADC Inc. and Derivative on Behalf of Choe Family Against**

15       **ADC USA, ADC Air, HAJA, Lee, Pham, Yamamori, Shrouder, Jina, and**

16                            **DOES 1 through 100**

17      191.   Plaintiffs hereby incorporate by reference herein each of the preceding

18  allegations.

19      192.   At all relevant times, each of plaintiff Choe, Boltier, ADC Inc., and

20  Choe Family is a "person" within the meaning of 18 U.S.C. sections 1961(3) and

21  1962(2).

22      193.   At all relevant times, each of Defendant ADC USA, ADC Air, Lee,

23  Pham, Yamamori, and DOES 1 through 100 is a "person" within the meaning of 18

24  U.S.C. sections 1961(3) and 1962(2).

25                            The RICO Enterprise

26      194.   Defendants ADC USA, ADC Air, HAJA, Lee, Pham, Yamamori,

27  Shrouder, Jina, and DOES 1 through 100 and their co-conspirators are a group of

28  persons associated together in fact for the common purpose of carrying out an

ongoing criminal enterprise, as described in the foregoing paragraphs.

195.  Namely, through a multi-faceted campaign of lies, fraud, and forgery, they sought to transfer intellectual property rights and other valuable assets from Boltier to Lee, and then to ADC USA and ADC Air.

196.  These Defendants have organized their operation into a cohesive group with specific and assigned responsibilities and a command structure, operating in multiple states, including California and Nevada.

197.  Over the years they have adapted their scheme to changing circumstances, recruiting new members to their operation, and expanding the scope and nature of their activities. While the organization of the criminal enterprise has changed over time, and its members may have held different roles at different times, the criminal enterprise has generally been structured to operate as a singular unit to accomplish the goals of their criminal scheme.

The Conduct

198.  **Defendant Lee**, on information and belief, is an individual who has masterminded the scheme to defraud Choe, Boltier, ADC Inc., and Choe Family and continues to direct and manage the RICO enterprise. Lee has directed other co-conspirators to take actions necessary to accomplish the overall aims of the criminal enterprise, namely, (i) causing Choe to enter into the Choe Family Operating Agreement with HAJA and the ADC Inc.-Choe Share Transfer Agreement, (ii) forging Choe's signature on the Forged Assignment, (iii) preparing and filing patent assignment documents and trademark assignment documents and applications online with the USPTO concerning fraudulently obtained patents and trademarks from Boltier, (iv) causing co-conspirators to use and misappropriate Boltier's trade secrets; and (v) ghostwriting court documents and causing them to be filed against Choe, Boltier, and ADC Inc. in a sham employment litigation, among others.

199.  **Defendants Pham and Yamamori** have been primarily responsible for

managing the day-to-day operations of the criminal enterprise at ADC USA.  Pham serves as Chief Operating Officer and board member at ADC USA. He has taken actions necessary to accomplish the overall aims of the criminal enterprise by using and misappropriating Boltier's stolen trade secrets, to the substantial detriment of Boltier. For example, on April 4, 2023, after Lee's fraudulently transfer of Boltier's trade secrets to himself, Pham emailed Choe requesting additional instructions to implement and use Boltier's proprietary information on a safety module installed with the patented products for capturing photovoltaic (PV) power without damaging the chargers. On information and belief, Yamamori has also supported the criminal enterprise's activities in a myriad of ways including, joining Pham in their pressure campaign to force Choe to execute the resolutions, seeking business partnerships for ADC USA and ADC Air to commercially exploit the intellectual property in the form of patents, trademarks, trade secrets, and other proprietary information the criminal enterprise fraudulently assigned to itself from Boltier.

200.  **Defendants Shrouder and Jina** have been primarily responsible for ensuring the criminal enterprise's continued expansion and preventing any legitimate legal challenges from Boltier, ADC Inc., or Choe from seeing the light of day.  Shrouder serves as Chief Information Officer at ADC USA.  As of June 10, 2024, he and Jina purport to enlist themselves as board members of Boltier.  In addition, Shrouder purports to be the Chief Executive Officer, Chief Financial Officer, and Secretary of Boltier.  He and Jina have taken actions necessary to accomplish the overall aims of the criminal enterprise by for instance purporting to be in control of Boltier and ADC Inc., and purporting to remove Choe from the companies without conducting *bona fide* shareholder vote to do so.

201.  **Defendants HAJA, ADC USA, and ADC Air** have served as the conduit entities for the criminal enterprise's operations.  HAJA, as the purported manager of Choe Family's ownership interests in ADC Inc. and Boltier, working through Lee have exerted control over ADC Inc. and Boltier to fraudulently divert

-42-
**COMPLAINT**

their intellectual property assets away from themselves and directly to Lee.  Lee in turn assigned those same intellectual property assets by fraudulent means to ADC USA. ADC USA then commercially exploited those stolen assets in conjunction with ADC Air and other third parties.

202.   Defendants ADC USA, ADC Air, Lee, Pham, Yamamori, Shrouder, Jina, and DOES 1 through 100 and their co-conspirators constitute an association-in-fact enterprise within the meaning of 18 U.S.C. sections 1961(4) and 1962(c).  Each of these Defendants participated in the operation or management of the enterprise.

203.   At all relevant times, the enterprise was engaged in, and its activities affected interstate and foreign commerce within the meaning of 18 U.S.C. section 1962(c).

## Pattern of Racketeering Activity - Multiple Instances of Mail and Wire Fraud in Violation of 18 U.S.C. §§ 1341 and 1343

204.   Defendants ADC USA, ADC Air, Lee, Jina, Shrouder, Pham, Yamamori, and DOES 1 through 100 and their co-conspirators conducted or participated, directly or indirectly, in the conduct, management, or operation of the enterprise's affairs through a pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5) and in violation of §1962(c) as detailed below.

205.   As described herein, ADC USA, engaged in a wide-ranging scheme to Choe, Boltier, ADC Inc., Choe Family, the USPTO, and the public regarding the proper ownership of Boltier's patents, trademarks, trade secrets and other intellectual property.

206.   The ultimate objective of Defendants' scheme or artifice to defraud is to steal all valuable patents and proprietary, trade secrets-protected technology belonging to Choe and his companies, Boltier and ADC Inc. and deprive these entities of licensing fees they were entitled to under a licensing agreement they had with ADC USA.

207.   On information and belief, in furtherance of their scheme, ADC USA, ADC Air, HAJA Lee, Pham, Yamamori, Jina, Shrouder, and DOES 1 through 100 transmitted, or caused to be transmitted, by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, and sounds, and also caused matters and things to be placed in any post office or authorized depository, or deposited or caused to be deposited matters or things to be sent or delivered by a private or commercial interstate carrier, including, but not limited to, the following.

208.   On May 29, 2021, using mail and/or wire communications, Lee (acting on behalf of each of ADC USA, HAJA, Pham, Yamamori, Jina, Shrouder, and their other co-conspirators) caused Choe to sign both the Choe Family Operating Agreement and the ADC. Inc.-Choe Family Shares Transfer Agreement. The Choe Family Operating Agreement purported to appoint both Choe and HAJA/Lee as co-managers of the entity and required unanimous consent to engage in all aspects of Choe Family's business operations, including to initiate lawsuits. The ADC Inc.-Choe Family Shares Transfer Agreement purported to transfer all of Choe's shares in ADC Inc.—25% of all outstanding shares—to Choe Family.  In doing so, Lee represented to Choe that HAJA was authorized to enter into such a transaction.  However, neither agreement was actually effective. As of May 29, 2021, HAJA was not authorized to do business because it had been suspended and inactive with the California Secretary of State since February 6, 2019. HAJA is still in inactive status as of today's date.

209.   On or about January 30, 2023, Lee (acting on behalf of himself, ADC USA, HAJA, Pham, Jina, Shrouder, Yamamori, and their co-conspirators), using mail and wire communications, sent to Choe of what purported to be an "Action by Unanimous Written Consent of the Board of Directors of Boltier R&D, Inc. Effective January 30, 2023." The draft document purported to serve as a unanimous agreement and authorization by all three members of Boltier's board of directors to convey all of the "ADC IP" to Lee.  The draft document contained signature lines for each of

Choe and Alan as the members of Boltier's board of directors. It also contained a signature line for Lee in his capacity as the third member of Boltier's board, notwithstanding that the content of the document benefited solely him and caused the entire set of transactions being considered to be an interested party transaction vis-à-vis Lee.

210. On or about February 13, 2023, Lee and Pham (acting on behalf of themselves, ADC USA, HAJA, Yamamori, Jina, Shrouder, and their co-conspirators), using mail and wires, including email communications, convinced Choe to sign the draft document nonetheless by misrepresenting its contents and purpose, and the effect of his signature on the draft.

211. On February 1, 2023, Lee (acting on behalf of himself, ADC USA, HAJA, Pham, Yamamori, Jina, Shrouder, and their co-conspirators), using the mail and/or wires, through email communications, sent to Choe three additional documents to execute: (i) "Action by Unanimous Written Consent of the Board of Directors of Boltier R&D, Inc. Effective January 30, 2023"; (ii) "Action by Unanimous Written Consent of the Board of Directors of ADC Energy, Inc. Effective January 30, 2023"; and (iii) "Action by Unanimous Written Consent of the Board of Directors of ADC Energy USA, Inc. Effective January 30, 2023." All three documents are identical. They summarize a series of events behind Lee's motivation to fraudulently transfer Boltier's intellectual property, namely that: (i) Lee presented an opportunity for ADC shareholders to vote on IPO evaluation, relocation and restructuring; and (ii) Choe with majority share voted "No" on all three proposals while Lee and others voted "Yes." Suspicious of Lee's request, Choe sought advice on these three documents, and ultimately, decided not to sign them.

212. On or about February 20, 2023, Lee (acting on behalf of himself, ADC USA, HAJA, Pham, Yamamori, and their co-conspirators), using mail and wires, including email communications, emailed Alan the documents signed by Lee and Choe, and instructing him to "sign and return. Or write 'Resigned' and return asap."

But upon reviewing the documents, Alan refused to sign and did not respond to Lee.

213.   Undeterred, Lee (acting on behalf of himself, ADC USA, HAJA, Pham, Yamamori, Jina, Shrouder, and their co-conspirators), using the mail and wires, including email communications, created the Forged Assignment. The Forged Assignment purported to be a resolution of "All ADC entities," conveying all "(ADC IP) including but not limited to: (l) all the property, right, title and interest in and to the Patents and Trademarks including all common law rights…(2) all income, royalties, and damages hereafter due or payable to Assignor with respect to the Trademark, including without limitation, damages, and payments for past or future infringements and misappropriations of the Patents and Trademarks; and (3) all rights to sue for past, present and future infringements or misappropriations of the Trademark, to Henry Lee and/or his assignee." Also, it only contained two signature lines—one for Choe and one for Lee. There was no signature line for Alan Choe. Moreover, Choe's signature purported to be affixed to the signature page along with a signature for Lee.  Choe's signature that Lee affixed to this document was a forgery.

214.   On February 23, 2023, using the mail and wires, Lee (acting on behalf of himself, ADC USA, HAJA, Pham, Yamamori, Jina, Shrouder and their co-conspirators) electronically filed a series of trademark assignment forms with the USPTO Assignment Center via its online webpage for Boltier's registered ADC ENERGY and POWER EVERYONE marks.  With each online assignment submission, Lee uploaded the Forged Assignment as evidence of the assignment. (*See* Exhibits M & N [Trademark Assignments and Bibliographic Data].)

215.   On March 11, 2023, using the mail and wires, Lee (acting on behalf of himself, ADC USA, HAJA, Pham, Yamamori, Jina, Shrouder and their co-conspirators) electronically filed a series of patent assignment forms with the USPTO via its online webpage for submitting assignment of patents records for each of the '437, '643, '720, and '560 Patents.  With each online assignment submission, Lee fraudulently stated that Boltier had assigned each of Boltier's four patents to Lee

himself. Moreover, he uploaded the Forged Assignment with his submission.

216. Then, on March 21, 2023, using the mail and wires, Lee (acting on behalf of himself, ADC USA, HAJA, Pham, Yamamori, Jina, Shrouder and their co-conspirators) electronically filed another set of assignment forms, transferring the *two* federal trademark registrations and the *four* issued patents from himself to ADC USA. *See* Exhibits M & O.

217. On April 19, 2023, Lee wrote a letter that he sent via the mail and/or the wires through email communications to ADC USA's shareholders that "Choe had gone completely unresponsive to any requests from him and Pham for "nearly two months". (Exhibit K [April 13, 2023 Letter to shareholders].) The information he was providing the shareholders was not true at all. In fact, on Saturday, April 6, 2023, just a week prior, Choe had responded to an email from Pham regarding a technical project for which Pham needed Choe's assistance.

218. On September 23, 2023, ADC USA using the wires filed a new trademark application for the ALTERNATING DIRECT CURRENT mark through the USPTO online portal. (*See* Exhibit L [Trademark Application for "Alternating Direct Current" Mark].) Boltier has common law rights to this mark and has used it as a source identifier of Boltier's patented technology.

219. On or about May 22, 2024, Lee sent an email to Choe as well as his former counsel in the employment litigation, demanding as managing member of Choe Family the following:

1. A copy of all retainer agreements, disclosures, waivers of conflicts for Boltier, ADC Energy, Hun Choe (For Pentis, Fred Lee, and all other attorneys representing you and/or the entities);

2. Attorney client trust account ledger, client accounting, payments, balance sheets, invoices, and copies of all checks/payments/wires, especially documentation of the source of the funds paid to any and all attorneys from or on behalf of Boltier, ADC Energy, Hun Choe.

3.  Copies of the entire client files including electronic files, including all documents provided to all attorneys for the Pham/Yamamori case.

4.  All communications with Hun Choe and/or attorneys representing Boltier, ADC Energy, LB entities, and/or anyone acting on Hun Choe behalf or in concert with him.

5.  All documents that mention, refer or reflect to all of the "LB" corporate entities with which Hun Choe is an officer, director, agent, including but not limited to all corporate records, shareholder ledgers, financial information.

220.   On information and belief, Lee sought to interfere with Choe's defense and block any legal action brought against Lee and his co-conspirators for their fraudulent conduct.

221.   Lee also accused Choe and his former employment attorneys of malpractice, breach of fiduciary duty and fraud to intimidate them and drive them away, leaving Choe defenseless in the employment action orchestrated by Lee:

Request is further made on the board of Boltier and ADC Energy that both corporate entities take action to investigate, audit and account for all financial transactions perpetrated by Hun Choe, including but not limited to taking action to investigate and prosecute a malpractice, breach of fiduciary duty, and fraud case against Carl Pentis, Fred Lee and Hun Choe; and taking action to investigate and prosecute a lawsuit for breach of fiduciary duty, fraud, violation of trade secrets, breach of contract and accounting, among other claims against Hun Choe arising from among other things, embezzlement of funds, failure to pay wages, and misappropriation of trade secrets in conspiracy with his LB entities and the LB shareholders/officers/directors.

222.   After orchestrating Pham's purported writ of attachment, which the state court has not rendered a decision on, Lee purported to purchase Choe's membership interest in Choe Family LLC for the sum of $1 in accordance with Section 2.7 of the operating agreement of Choe Family—confirming that his scheme to defraud Choe extended at least as far back as when he purported to form Choe

1  Family LLC. A true and correct copy of Lee's communication to Choe is attached as
2  Exhibit I ([June 10, 2024 Letter from Lee to Choe]).

3      223.   Then, in a transparent attempt to prevent Choe from suing and exposing
4  Lee's and his co-conspirators of their criminal scheme and enterprise, Lee enlisted
5  his co-conspirators Jina and Shrouder to replace Choe from the Boltier and ADC
6  Inc. boards. In doing so, on June 10, 2024, Shrouder filed a false Statement of
7  Information with the California Secretary of State purporting to replace Choe with
8  Jina and Shrouder for Boltier. (*See* Exhibit J [June 10, 2024 False Statement of
9  Information filed by Shrouder]. Shrouder subsequently sent an email to Choe
10  proclaiming that he is "newly appointed to and speak for the Board of Directors" of
11  ADC Inc. and that Choe is terminated from all positions. There was no meeting or
12  vote of shareholders on the purported election of Jina and Shrouder to the Board of
13  Boltier. Nor was there a meeting or vote of shareholders on the purported
14  appointment of Shrouder and termination of Choe.

15      224.   Defendants ADC USA, ADC Air, Lee, Pham, Yamamori, Shrouder,
16  Jina, and DOES 1 through 100 participated in the scheme or artifice knowingly,
17  willfully, and with the specific intent to deceive and/or defraud: (i) Choe and Boltier
18  into assigning Boltier's intellectual property rights to Defendants;  (ii) the USPTO
19  office to record the Forged Assignments of Boltier's four patents and two
20  trademarks; and (iii) the California Secretary of State and general public into
21  believing that they were the true owners and controllers of Boltier's and ADC Inc.'s
22  intellectual property rights and the quell any potential challenges by any party
23  outside of the criminal enterprise.

24      225.   ADC USA, ADC Air, Lee, Pham, Yamamori, Jina, Shrouder, and
25  DOES 1 through 100 then further caused statements regarding the Forged
26  Assignment and assignments, and control of Boltier and ADC Inc., which they knew
27  to be false or misleading, to be disseminated to the USPTO and the California
28  Secretary of State with the intent that those statements be believed by the public.

1  This would convince third parties to enter into business ventures with ADC USA

2  and ADC Air, as well as contract directly with their criminal enterprise.

3      226.   Further, these Defendants' false and misleading statements have caused

4  Plaintiffs substantial damages.

5      227.   Each of these Defendants has engaged in multiple predicate acts, as

6  described above.  The conduct of each of the Defendants described constitutes a

7  pattern of racketeering activity within the meaning of 18 U.S.C. §1961(5).

8      228.   Plaintiffs were injured in their business and property by reason of the

9  Defendants' violations of 18 U.S.C. §1962(c).  The injuries to Plaintiffs caused by

10  reason of the violations of 18 U.S.C. §1962(c) include but are not limited to damage

11  to Plaintiffs' reputation and goodwill, the impairment of each of Plaintiffs' interest

12  in executed contracts; loss or diminution in the value and extent of their intellectual

13  property rights in their patents, trademarks, trade secrets, and other intellectual

14  property; the attorneys' fees and costs to defend themselves in objectively baseless,

15  improperly motivated sham litigation in Los Angeles Superior court

16      229.   Further, these injuries to Plaintiffs were a direct, proximate, and

17  reasonably foreseeable result of the violation of 18 U.S.C. §1962. Each of Plaintiff's

18  is the ultimate victim of the Defendants' unlawful enterprise.

19      230.   Plaintiffs have been and will continue to be injured in their respective

20  business and property in an amount to be determined at trial.

21      231.   Pursuant to 18 U.S.C. §1964(c), Plaintiffs are entitled to recover treble

22  damages plus costs and attorneys' fees from the RICO Defendants.

23

24          **COUNT V: CONSPIRACY TO VIOLATE RICO**

25      **Choe, Boltier, ADC Inc., and Derivative on Behalf of Choe**

26        **Family Against ADC USA, ADC Air, HAJA, Lee, Pham,**

27          **Yamamori, Jina, Shrouder, and DOES 1 through 100**

28      232.   Plaintiffs hereby incorporate by reference herein each of the preceding

allegations.

233.   ADC USA, ADC Air, HAJA, Lee, Pham, Yamamori, Jina, Shrouder, and DOES 1 through 100 have unlawfully, knowingly and willfully combined, conspired, confederated and agreed together and with others to violate 18 U.S.C. §1962(c) as described above, in violation of 18 U.S.C. §1962(d).

234.   Upon information and belief, these Defendants knew that they were engaged in a conspiracy to commit the predicate acts, and they knew that the predicate acts were part of such racketeering activity, and the participation and agreement of each of them was necessary to allow the commission of this pattern of racketeering activity. This conduct constitutes a conspiracy to violate 18 U.S.C. §1962(c), in violation of 18 U.S.C. §1962(d).

235.   Upon information and belief, these Defendants agreed to conduct or participate, directly or indirectly, in the conduct, management, or operation of the enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. §l962(c).

236.   Each Defendant knew about and agreed to facilitate the enterprise's scheme to obtain property from Plaintiffs. It was part of the conspiracy that Defendants and their co-conspirators would commit a pattern of racketeering activity in the conduct of the affairs of the enterprise, including the acts of racketeering set forth above.

237.   Plaintiffs were injured in their business and property by reason of the Defendants' violations of 18 U.S.C. §1962(c).  The injuries to Plaintiffs caused by reason of the violations of 18 U.S.C. §1962(c) include but are not limited to damage to Plaintiffs' reputation and goodwill, the impairment of each of Plaintiffs' interest in executed contracts; loss or diminution in the value and extent of their intellectual property rights in their patents, trademarks, trade secrets, and other intellectual property; the attorneys' fees and costs to defend themselves in objectively baseless, improperly motivated sham litigation in Los Angeles Superior Court.

238. Further, these injuries to Plaintiffs were a direct, proximate, and reasonably foreseeable result of the violation of 18 U.S.C. §1962. Each of Plaintiff's is the ultimate victim of the Defendants' unlawful enterprise.

239. Plaintiffs have been and will continue to be injured in their respective business and property in an amount to be determined at trial.

240. Pursuant to 18 U.S.C. §1964(c), Plaintiffs are entitled to recover treble damages plus costs and attorneys' fees from the RICO Defendants.

## COUNT VI: DECLARATORY JUDGMENT

**Choe, Boltier, ADC Inc., and Derivative on Behalf of Choe Family**

**Against ADC USA, ADC Air, HAJA, Lee, Shrouder, Jina, and DOES 1**

**through 100**

241. Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

242. On May 29, 2021, Lee caused Choe to sign both the Choe Family Operating Agreement and the ADC. Inc.-Choe Family Shares Transfer Agreement.

243. The Choe Family Operating Agreement purported to appoint both Choe and HAJA/Lee as co-managers of the entity and required unanimous consent to engage in all aspects of Choe Family's business operations, including to initiate lawsuits. The ADC Inc.-Choe Family Shares Transfer Agreement purported to transfer all of Choe's shares in ADC Inc.—25% of all outstanding shares—to Choe Family.

244. There is a continuing, ripe and justiciable controversy concerning (i) whether HAJA was authorized by law to enter into the Choe Family Operating Agreement and, thus, whether Choe could have transferred all of his shares in ADC Inc. to Choe Family, (ii) whether the Forged Assignment was effective, and (iii) whether any subsequent actions taken by Lee, Shrouder, and Jina based on purported rights under the Choe Family Operating Agreement are void.

245.    Plaintiffs herein claim that neither the Choe Family Operating Agreement nor the ADC Inc.-Choe Family Shares Transfer Agreement was actually effective, and is thus voidable because as of purported execution date of May 29, 2021, HAJA was not authorized to do business because it had been suspended and inactive with the California Secretary of State since February 6, 2019, and remains so today. Pursuant to California Revenue and Taxation Code §23304.1(a), both the Choe Family Operating Agreement and the ADC Inc.-Choe Family Shares Transfer Agreement were ineffective and voidable under §23304.5.

246.    In addition, Plaintiffs claim that the Choe Family Operating Agreement and the ADC-Inc.-Choe Family Shares Transfer Agreement are void ab initio because Lee and his co-conspirators deceived Choe to enter into them through undue duress, fraud, mistake and other illicit means during a particularly vulnerable time when elderly Choe was mourning the death of his wife of four decades.

247.    Plaintiffs also claim that the Forged Assignment document is void *ab initio* because it was procured by forgery and none of the alleged signatories had authority to bind any of the entities purporting to consent to an assignment of rights from Choe, Boltier, and ADC Inc. to Lee or any other party.

248.    Therefore, Plaintiffs seek a declaratory judgment that each of the Choe Family Operating Agreement, ADC-Inc.-Choe Family Shares Transfer Agreement, and Forged Assignment is void *ab initio*.

249.    Plaintiffs also seek a declaratory judgment that the effect of Lee's fraudulent assignment has terminated the ADC Inc.-ADC USA sublicense agreement. Given that a property owner cannot be a sublicensee to his property, Lee's actions resulted in the termination of the rights granted from ADC Inc. to ADC USA with respect to the four patents.

**COUNT VII: CIVIL CONSPIRACY**

**Choe, Boltier, ADC Inc., and Derivative on Behalf of Choe Family Against ADC USA, ADC Air, HAJA, Lee, Pham, Yamamori, Jina, Shrouder and DOES 1 through 100**

250.  Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

251.  Each of Defendants ADC USA, ADC Air, HAJA, Lee, Pham, Yamamori, Jina, Shrouder and DOES 1 through 100 formed an agreement and conspired together to defraud Choe, Choe Family, Boltier, and ADC Inc. and deprive them of their intellectual property and other assets and divert these Plaintiffs' property for their own benefit.

252.  As a direct and proximate result of this conspiracy and/or wrongful acts, each Plaintiff has been damaged, in an amount to be proven at trial.

253.  Defendants acted with malice, fraud, and oppression, entitling each Plaintiff to an award of punitive and exemplary damages to the extent available by law according to proof.

**COUNT VIII: BREACH OF FIDUCIARY DUTY**

**Boltier and ADC Inc. Against Leeand DOES 1 through 100**

254.  Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

255.  As the Secretary and a member of the board of directors of Boltier and ADC Inc., Lee owed them and their shareholders a duty of utmost care, integrity, honesty and loyalty. Lee also owed Boltier, ADC Inc. and their respective shareholders a duty of good faith and fair dealing and a continuing duty of confidentiality.

256.  Lee breached his fiduciary duties to Boltier and its shareholders by, among other things, creating a Forged Assignment that purported to assign to Lee

(acting on his own behalf and on behalf of ADC USA, ADC Air, HAJA, Pham, Yamamori, and DOES 1 through 100) all of Boltier's intellectual property rights without any authorization from Boltier's board of directors and shareholders, and without consent sharing Boltier's confidential information, including Boltier's financial records, with third parties, including Pham,  Yamamori, and Shrouder.

257.   Lee also breached his fiduciary duties to ADC Inc. and its shareholders by, among other things, creating a Forged Assignment (acting on his own behalf and on behalf of ADC USA, ADC Air, HAJA, Pham, Yamamori, and DOES 1 through 100) that attempts to: (i) usurp the exclusive rights granted to ADC Inc. under the ADC Inc.-Boltier license agreement with respect to its four patents, and (ii) circumvent the royalties that ADC USA owes ADC Inc. under the ADC Inc.-ADC USA sublicense agreement.  Lee's action was unauthorized by ADC Inc.'s board of directors and shareholders.

258.   As a direct and proximate result of Lee's breach of the fiduciary duties owed to Boltier and ADC Inc., Boltier and ADC Inc. have suffered in an amount to be proven at trial.

259.   The above-described acts were done intentionally, with fraud. Boltier, ADC Inc. and their respective shareholders are therefore entitled to punitive and exemplary damages in an amount according to proof.

## COUNT IX: BREACH OF FIDUCIARY DUTY

### Choe and Derivative on Behalf of Choe Family Against HAJA

260.   Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

261.   As the managing member of Choe Family, HAJA owed Choe Family and its members a duty of utmost care, integrity, honesty and loyalty.  HAJA also owed Choe Family and its members a duty of good faith and fair dealing.

262.   HAJA breached its fiduciary duties to Choe and its members by, among

other things: (a) deceiving Choe to transfer his shares in ADC, Inc. to Choe Family in exchange for HAJA's management when HAJA was not even authorized to do business with Choe or Choe Family,  (b) creating a Forged Assignment that purported to assign to Lee (acting on his own behalf and on behalf of ADC USA, ADC Air, HAJA, Pham, Yamamori, and DOES 1 through 100) all of ADC Inc.'s and Boltier's intellectual property rights without any authorization from ADC's or Boltier's board of directors and shareholders, and (c) purporting to seek to repurchase on behalf of Choe Family all of Choe's membership interest in Choe Family for $1 based on an application for writ of attachment that Lee himself authored in a baseless action.

263.   The effect of these transfers was to divert significant assets out of Choe Family to Lee and his entities for no consideration.

264.   As a direct and proximate result of HAJA's breach of the fiduciary duties owed to Choe Family and its members, Choe Family and Choe have suffered in an amount to be proven at trial.

265.   The above-described acts were done intentionally, with fraud. Choe Family and Choe are therefore entitled to recover an award of punitive and exemplary damages in an amount according to proof.

## COUNT X: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

**Boltier and ADC Inc. Against ADC USA, ADC Air, HAJA, Pham, Yamamori, Jina, Shrouder and DOES 1 through 100**

266.   Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

267.   As the Secretary and a member of the board of directors of Boltier and ADC Inc., Lee owed Boltier, ADC Inc. and their respective shareholders a duty of utmost care, integrity, honesty and loyalty.  Lee also owed Boltier, ADC Inc. and their respective shareholders a duty of good faith and fair dealing.

268.   Lee breached his fiduciary duties to Boltier, ADC Inc. and their

respective shareholders by, among other things, creating a Forged Assignment that purported to assign to Lee all of Boltier's and ADC Inc.'s intellectual property rights without any authorization from the companies' board of directors and shareholders.

269.   ADC USA, ADC Air, HAJA, Pham, Yamamori, Jina, Shrouder, and DOES 1 through 100 knew that Lee would breach his fiduciary duties to Boltier and ADC Inc.  Each of them knowingly participated in Lee's breach by encouraging, participating in, and approving the misconduct that constituted the breach and harmed Boltier, ADC Inc., and their respective shareholders.

270.   As a result, Boltier, ADC Inc. and their shareholders have been damaged in a total amount to be proven at trial.

## COUNT XI: AIDING AND ABETTING BREACH OF FIDUCIARY DUTY

**Choe and Derivative on Behalf of Choe Family Against ADC USA, ADC Air, Pham, Yamamori, Jina, Shrouder, and DOES 1 through 100**

271.   Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

272.   As managing member, HAJA owed Choe Family and its members a duty of utmost care, integrity, honesty and loyalty.  HAJA also owed Choe Family and its members a duty of good faith and fair dealing.

273.   HAJA breached its fiduciary duties to Choe and its members by, among other things: (a) deceiving Choe to transfer his shares in ADC, Inc. to Choe Family in exchange for HAJA's management when HAJA was not even authorized to do business with Choe or Choe Family; (b) creating a Forged Assignment that purported to assign to Lee (acting on his own behalf and on behalf of ADC USA, ADC Air, HAJA, Pham, Yamamori, Jina, Shrouder, and DOES 1 through 100) all of ADC Inc.'s and Boltier's intellectual property rights without any authorization from ADC's or Boltier's board of directors and shareholders; and (c) purporting to seek to repurchase on behalf of Choe Family all of Choe's membership interest in Choe Family for $1

1   based on an application for writ of attachment that Lee himself authored in a baseless

2   action.

3

4         274.   ADC USA, ADC Air, HAJA, Pham, Yamamori, Jina, Shrouder, and

5   DOES 1 through 100 knew that HAJA would breach its fiduciary duties to Choe

6   Family.  Each of them knowingly participated in HAJA's breach by encouraging,

7   participating in, and approving the misconduct that constituted the breach and harmed

8   Choe and Choe Family.

9         275.   As a result, Choe and Choe Family have been damaged in a total amount

10  to be proven at trial.

11

12              **COUNT XII: CONVERSION**

13  **Boltier, ADC Inc. and Derivative on Behalf of Choe Family Against ADC USA,**

14  **ADC Air, HAJA, Lee, Pham, Yamamori, Shrouder, and DOES 1 through 100**

15        276.   Plaintiffs hereby incorporate by reference herein each of the preceding

16  allegations.

17        277.   On May 29, 2021, Lee caused Choe to sign both the Choe Family

18  Operating Agreement and the ADC. Inc.-Choe Family Shares Transfer Agreement.

19        278.   The Choe Family Operating Agreement purported to appoint both Choe

20  and HAJA/Lee as co-managers of the entity and required unanimous consent to

21  engage in all aspects of Choe Family's business operations, including to initiate

22  lawsuits. The ADC Inc.-Choe Family Shares Transfer Agreement purported to

23  transfer all of Choe's shares in ADC Inc.—25% of all outstanding shares—to Choe

24  Family.

25        279.   Then, on January 30, 2023, Lee acting on his own behalf on and behalf

26  of each of ADC USA, ADC Air, HAJA, Pham, Yamamori, Shrouder and DOES 1-

27  100 prepared the Forged Assignment purporting to transfer and/or assign Boltier's

28  intellectual property rights to Lee. At the time of the fraudulent transfer, Boltier's

patents were and still are exclusively licensed to ADC Inc.

280. Additionally, on June 8, 2024, Lee/HAJA purported to exercise his rights to acquire, without Choe's authorization, Choe's 75% majority membership interest in Choe Family for $1 allegedly as a result of an attempted levy by Pham and Yamamori on Choe Family assets, which Lee himself orchestrated.

281. These acts by Lee were fraudulent and in breach of his fiduciary duties to each of Choe Family, Boltier, and ADC Inc.

282. As a direct and proximate result of Lee's misrepresentations to Choe and forgery of Choe's signature, each Plaintiff has suffered in an amount to be proven at trial.

283. The above-described acts were done intentionally and with fraud. Each Plaintiff is therefore entitled to recover an award of punitive and exemplary damages in an amount according to proof.

## COUNT XIII: UNJUST ENRICHMENT

**Boltier, ADC Inc., and Direct and Derivative on Behalf of Choe Family Against ADC USA, ADC Air, HAJA, Lee, and DOES 1 through 100**

284. Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

285. Choe, Boltier, ADC, and Choe Family and conferred an economic benefit upon Defendants ADC USA, ADC Air, HAJA, Lee and DOES 1 through 100 by (a) entering into the Choe Family Operating Agreement and ADC Inc.-Choe Family Share Transfer Agreement, (b) transferring Choe's shares in ADC to Choe Family, (c) purporting to transfer membership interest in Choe Family to HAJA, and (d) purporting to transfer Choe's, Boltier's, and ADC Inc.'s intellectual property rights to Lee acting his own behalf and on behalf of ADC USA, ADC Air, HAJA, and DOES 1 through 100.

286. These Defendants obtained the foregoing benefits as a result of several

promises they made to each Plaintiff including that HAJA was authorized to conduct business and through the Forged Assignment that these Defendants extracted from each Plaintiff.

287.   These Defendants accepted and retained each of the foregoing benefits conferred by these Plaintiffs.

288.   These Defendants knew or should have known that their promises were material to the Plaintiffs' decision to confer them these benefits.

289.   As a result of these Defendants' actions, they have been unjustly enriched at the Plaintiffs' expense in an amount to be proven at trial.

## COUNT XIV: UNFAIR COMPETITION
## (CALIFORNIA BUSINESS AND PROFESSIONS CODE § 17200)
**Boltier, ADC Inc., and Derivative on Behalf of Choe Family Against ADC USA, ADC Air, Lee, Pham, Yamamori, Jina, Shrouder and DOES 1 through 100**

290.   Plaintiffs hereby incorporate by reference herein each of the preceding allegations.

291.   Business and Professions Code section 17200 et seq. prohibits acts of unfair competition, which means and includes any "fraudulent business act or practice ... and conduct, which is likely to deceive," and is "fraudulent" within the meaning of section 17200.

292.   By the conduct set forth above, each of ADC USA, ADC Air, Lee, Pham, Yamamori, Jina, Shrouder, and DOES 1 through 100 have engaged in unfair competition in violation of section 17200. Among other facts stated herein, each of these Defendants acting through their agent Lee engaged in deceptive and fraudulent business practices by forging Choe's signature on the Forged Assignment to obtain a fake assignment of intellectual property rights belonging to Boltier and ADC Inc. Then, transferring those rights to ADC USA, and subsequent transferring certain rights to ADC Air—all without authorization.

293.   Moreover, Lee/HAJA purported to seek to repurchase on behalf of Choe Family all of Choe's membership interest in Choe Family for $1 based on an application for writ of attachment that Lee himself authored.

294.   Then, through false appointments of Jina and Shrouder to Boltier's board of directors, these Defendants sought to prevent any stakeholder, including Choe, from seeking court intervention or any investigation into the LEE Scheme and Defendants' malfeasance.

295.   As a result of these Defendants' misconduct, Boltier, ADC Inc., Choe, and Choe Family have suffered extensive damages, and seeks restitution of all money, property, profits, and other benefits acquired by these Defendants by means of their unfair business practices in an amount to be proven at trial.

## COUNT XV: ELDER ABUSE
## (CALIFORNIA WELFARE AND INSTITUTIONS CODE § 15610)
### Choe Against Lee, Pham, Yamamori, Jina, and Shrouder

296.   Plaintiff hereby incorporates by reference herein each of the preceding allegations.

297.   At all relevant times, Choe was over 65 years old.

298.   Lee, Pham, Yamamori, Jina, and Shrouder knew or should have known Choe was over 65 years old at the time of the abuse.

299.   Lee engaged in elder abuse by, among other things, misleading Choe to sign both the Choe Family Operating Agreement and the ADC. Inc.-Choe Family Shares Transfer Agreement. The Choe Family Operating Agreement purported to appoint both Choe and HAJA/Lee as co-managers of the entity and required unanimous consent to engage in all aspects of Choe Family's business operations, including to initiate lawsuits. Lee deceived Choe to give up certain of his control rights and his shares to Choe Family. In doing so, Lee sought to control Choe with full veto rights through then (and still)-defunct HAJA.

300.   Lee also engaged in elder abuse by obtaining Choe's signature on the January 30, 2023 draft unanimous consent and using that to manufacture a faked signature for Choe on the Forged Assignment that Lee used to purportedly divest from Boltier and ADC Inc. their valuable intellectual property rights, including patents and trade secrets.

301.   Lee also engaged in elder abuse by accusing Choe's former employment counsels for malpractice, breach of fiduciary duty and fraud, in an attempt to intimidate them, drive them away and render Choe defenseless in the sham employment action that Lee has orchestrated against Choe.

302.   Lee also engaged in elder abuse by orchestrating a sham employment action, on behalf of his co-conspirators Pham and Yamamori, drafting a writ of attachment against Choe's membership interest in Choe Family, Boltier and ADC Inc., purporting torepurchase on behalf of Choe Family all of Choe's membership interest in Choe Family for $1 based on an application for writ of attachment that Lee himself authored, and enlisting co-conspirators Jina and Shrouder to replace Choe from the Boltier and ADC Inc. boards.

303.   Additionally, on information and belief, implementing their fraudulent scheme against Choe, defendants Lee, Pham and Yamamori engaged in elder abuse by misappropriating, and continue to misappropriate trade secrets that Choe innovated and developed for Boltier.

304.   Lee, Pham, Yamamori, Jina and Shrouder engaged in this conduct with the intent to defraud Choe.

305.   As a result of defendants' conduct, Choe was harmed.

306.   The conduct of Lee, Pham, Yamamori, Jina and Shrouder was a substantial factor in causing Choe's harm.

307.   As a direct and proximate result of their misrepresentations and/or misappropriation, Choe has suffered in an amount to be proven at trial.

**COUNT XVI: FRAUD BY INTENTIONAL MISREPRESENTATION**

**Choe, Boltier, and ADC Inc. Against ADC USA, ADC Air, Lee, Pham,**

**Yamamori and DOES 1 through 100**

308.   Plaintiff hereby incorporates by reference herein each of the preceding allegations.

309.   On January 30, 2023, Lee acting on his own behalf and on behalf of ADC USA, ADC Air, Pham, Yamamori, and DOES 1 through 100, represented orally and in writing in the draft unanimous consent that he provided to Choe to sign that the document was a draft and required Alan Choe's signature to effectuate a unanimous board vote.

310.   These Defendants knew the representation was false because these Defendants knew Lee intended to use the signature to create the Forged Assignment to assign illegally intellectual property rights belonging to ADC Inc. and Boltier to Lee, and ultimately to ADC USA and ADC Air.

311.   These Defendants knew that the representation was false when Lee made it on their behalf, or Lee made the representation recklessly and without regard for its truth.

312.   These Defendants intended that Choe, ADC Inc., and Boltier rely on the representation.

313.   Choe, ADC Inc., and Boltier reasonably relied on it by among other things executing the draft unanimous consent with the expectation that Alan Choe would examine the document and approve or disapprove of the proposed resolution. But Lee didn't present the agreement to Alan Choe. Instead, he used Choe's signature to create the Forged Assignment that purported to assign intellectual property rights to Lee.

314.   As a result of Defendants' fraud, each of Choe, ADC Inc., and Boltier has been damaged in an amount to be proven at trial.

315.   In committing the acts complained of, these Defendants acted with

malice, fraud, and oppression, entitling Choe, ADC Inc., and Boltier to an award of punitive damages against these Defendants to the extent available by law and subject to proof.

## COUNT XVII: NEGLIGENT MISREPRESENTATION

### Choe, Boltier, and ADC Inc. Against ADC USA, ADC Air, Lee, Pham, Yamamori and DOES 1 through 100

316.   Plaintiff hereby incorporates by reference herein each of the preceding allegations.

317.   On January 30, 2023, Lee acting on his own behalf and on behalf of ADC USA, ADC Air, Pham, Yamamori, and DOES 1 through 100, represented orally and in writing in the draft unanimous consent that he provided to Choe to sign that the document was a draft and required Alan Choe's signature to effectuate a unanimous board vote.

318.   These representations were not true.

319.   These Defendants had no reasonable grounds for believing the representations to Choe were true because these Defendants knew Lee intended to use the signature to create the Forged Assignment to assign illegally intellectual property rights belonging to Choe, ADC Inc., and Boltier to Lee, and ultimately to ADC USA and ADC Air.

320.   Choe, ADC Inc., and Boltier reasonably relied on it by among other things executing the draft unanimous consent with the expectation that Alan Choe would examine the document and approve or disapprove of the proposed resolution. But Lee didn't present the agreement to Alan Choe. Instead, he used Choe's signature to create the Forged Assignment that purported to assign intellectual property rights to Lee.

321.   As a result of Defendants' fraud, each of Choe, ADC, and Boltier has been damaged in an amount to be proven at trial.

1                                 **PRAYER FOR RELIEF**

2         WHEREFORE, Plaintiff demands judgment be entered against Defendants,

3 and DOES 1 through 100, and each of them as follows:

4       1.    On Count I (Trademark Infringement):

5           a.   That the Court adjudge and decree that Defendants have, without

6                the consent of Boltier, under in commerce ADC ENERGY and

7                POWER EVERYONE trademarks in connection with the sale or

8                offering of goods and/or services that is likely to cause confusion, or

9                to cause mistake, or to deceive in violation of 15 U.S.C. §1114;

10          b.   That the Court award Boltier: (i) general, compensatory and special

11                damages according to proof at the time of trial, including an

12                enhancement by the Court as set forth in 15 U.S.C. §1117, (ii) a

13                disgorgement of the profits earned by Defendants that are

14                attributable to the wrongful act set forth herein pursuant to 15

15                U.S.C. §1117, (iii) exemplary damages as the court finds

16                appropriate to deter any future willful conduct, and (iv) interest,

17                including prejudgment interest, of the foregoing sums;

18          c.   That the Court issue an order declaring this case is "exceptional"

19                and that Defendants be ordered to pay the reasonable attorneys' fees

20                and costs incurred by Boltier in prosecuting this action pursuant to

21                15 U.S.C. §1117;

22          d.   That the Court permanently enjoin Defendants, their agents,

23                employees, officers, managers, and all persons acting in concert or

24                participation with them, or with any of them, from:

25                i.   manufacturing, distributing/providing, selling, marketing,

26                    advertising, promoting, or authorizing any third party to

27                    manufacture, distribute/provide, sell, market, advertise or

28                    promote Defendants' goods and services bearing the mark

**COMPLAINT**

ADC ENERGY and POWER EVERYONE or any other mark that is a counterfeit, copy, simulation, confusingly similar variation, or colorable imitation of such marks;

   ii.  misrepresenting the ownership of the ADC ENERGY and POWER EVERYONE marks;

   iii.  aiding, assisting, or abetting any other individual or entity in doing any act prohibited by sub-paragraphs (i) and (ii).

2.   On Count II (Misappropriation of Trade Secrets under DSTA):

   a.  for an injuncting restraining and enjoining the Defendants, their agents, employees, and all other persons acting in concert or participating with them, from disclosing or using any proprietary, confidential, or trade secret information obtained from Boltier;

   b.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

   c.  for an award of attorneys' fees and costs; and

   d.  for an award for double damages pursuant to 18 U.S.C. §1836(b)(3)(C).

3.   On Count III (Misappropriation of Trade Secrets under California law):

   a.  for an injuncting restraining and enjoining the Defendants, their agents, employees, and all other persons acting in concert or participating with them, from disclosing or using any proprietary, confidential, or trade secret information obtained from Boltier;

   b.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

   c.  for an award of attorneys' fees and costs; and

   d.  for an award for increased damages pursuant to California Civil Code §§ 3426.3(c).

4.   On Count IV (Violation of RICO):

**COMPLAINT**

a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

b.  for a judgment for punitive and exemplary damages in an amount to be determined by proof at trial;

c.  for an award of attorneys' fees and costs attorneys' fees and costs incurred; and

d.  for a judgment for treble damages pursuant to 18 U.S.C. section 1964(c).

5.    On Count V (Conspiracy to Violate RICO):

a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

b.  for a judgment for punitive and exemplary damages in an amount to be determined by proof at trial;

c.  for an award of attorneys' fees and costs; and

d.  for a judgment for treble damages pursuant to 18 U.S.C. section 1964(c).

6.    On Count VI (Declaratory Judgment):

a.  a declaratory judgment that each of the Choe Family Operating Agreement, ADC-Inc.-Choe Family Shares Transfer Agreement, and Forged Assignment is void ab initio and any and all subsequent actions taken by the parties based thereon are ineffective and void ab initio;

b.  a declaratory judgment that the ADC Inc.-ADC USA sublicense agreement has terminated; and

c.  a declaratory judgment that the Forged Assignment was ineffective and void ab initio and any and all subsequent actions taken by the parties based thereon are ineffective and void ab initio.

7.    On Count VII (Civil Conspiracy):

**COMPLAINT**

a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

b.  for a judgment for punitive and exemplary damages in an amount to be determined by proof at trial;

8.   On Count VIII (Breach of Fiduciary Duty to Boltier & ADC Inc.):

a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

b.  for an award of attorneys' fees and costs; and

c.  for a judgment for punitive and exemplary damages in an amount to be determined by proof at trial;

9.   On Count IX (Breach of Fiduciary Duty to Choe and Choe Family):

a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

b.  for an award of attorneys' fees and costs; and

c.  for a judgment for punitive and exemplary damages in an amount to be determined by proof at trial.

10.   On Count X (Aiding and Abetting Breach of Fiduciary Duty to Boltier and ADC Inc.):

a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

b.  for an award of attorneys' fees and costs; and

c.  for a judgment for punitive and exemplary damages in an amount to be determined by proof at trial.

11.   On Count XI (Aiding and Abetting Breach of Fiduciary Duty to Choe and Choe Family):

a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial;

b.  for an award of attorneys' fees and costs; and

**COMPLAINT**

       c.  for a judgment for punitive and exemplary damages in an amount to be determined by proof at trial.

12.    On Count XII (Conversion):

       a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial.

13.    On Count XIII (Unjust Enrichment):

       a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial.

14.    On Count XIV (Unfair Competition):

       a.  for a judgment for restitution of all money, property, profits, and other benefits acquired by Defendants by means of their unfair business practices in an amount to be proven at trial; and

       b.  for an award of attorneys' fees and costs.

15.    On Count XV (Elder Abuse):

       a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial; and

       b.  for an award of attorneys' fees and costs

16.    On Count XVI (Fraudulent Misrepresentation):

       a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial; and

       b.  for a judgment for punitive and exemplary damages in an amount to be determined by proof at trial.

17.    On Count XII (Negligent Misrepresentation):

       a.  for a judgment for compensatory and general damages in an amount to be determined by proof at trial.

18.    On All Counts:

       a.  for a judgment for interest thereon at the legal rate;

       b.  for an award of attorneys' fees and costs as allowed by law;

**COMPLAINT**

c.  for preliminary and permanent injunctive relief; and

d.  for such other and further relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED:  June 11, 2024            ORBIT IP, LLP


By:  */s/ Ehab M. Samuel*
EHAB M. SAMUEL
DAVID A. RANDALL

*Attorneys for Plaintiffs*

**COMPLAINT**